FOURTH DIVISION

December 4, 2003

No. 1-02-3533

COLMAR, LTD., ) Appeal from the Circuit 

) Court of Cook County 

Plaintiff-Appellant, )

 ) 

 v. )

) No. 02 CH 15805

FREMANTLEMEDIA NORTH ) 

AMERICA, INC. ) 

) The Honorable

Defendant-Appellee. )            Lester D. Foreman,

)            Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Colmar, Ltd. (Colmar), appeals from the trial court's order dismissing its complaint seeking to vacate an arbitration award entered in favor of defendant, Fremantlemedia North America, Inc. (FMNA).  Colmar argues on appeal that the trial court erred by affirming the arbitration award because (1) the arbitration award was void due to the fact that defendant was represented during the arbitration by an attorney who was not licensed in Illinois; (2) the arbitrator exceeded his powers by refusing to hear material evidence, ruling on an issue not submitted in plaintiff's complaint, and failing to consider all of the arguments presented in plaintiff's complaint; and (3) public policy demands that the trial court vacate the award.  Colmar further alleges that the trial court erred by dismissing the complaint for failure to state a claim upon which relief could be granted.  We affirm the order of the court below. 

Colmar is a Delaware corporation that produced and owns a feature motion picture entitled "Captive."  FMNA, also a Delaware corporation, which is based in Califormia, is the wholly owned American subsidiary of a European media conglomerate that is engaged in the worldwide production and distribution of motion pictures and television programs.

In 1994, Colmar and FMNA entered into a license agreement (contract) whereby Colmar licensed its film to FMNA.  The contract provided that FMNA would market the film through December 31, 2003.  The contract contained an arbitration clause that provided that the parties would submit any disputes arising from the contract to arbitration, pursuant to the rules of the American Arbitration Association (AAA).  

In March 2000, Colmar filed its first arbitration demand against FMNA, alleging that FMNA had breached the contract by failing to "actively and aggressively" market the film.  FMNA was represented during this arbitration by its California attorney, Peter J. Anderson (Anderson) – an attorney licensed to practice in California, but not in Illinois.  During the course of the arbitration, Anderson took the deposition of a Colmar witness and attended arbitration proceedings in Chicago.  The arbitration concluded after nearly one year, with the arbitrator finding FMNA not liable.  In an order dated February 22, 2001, the trial court confirmed the arbitration award and denied Colmar's request to vacate it.
(footnote: 1)  Colmar did not appeal from the trial court's order. 

On August 11, 2001, Colmar filed a second arbitration complaint against FMNA.  FMNA sought to dismiss the complaint, arguing that the claims it raised were the same as those previously considered in the first arbitration.  Colmar argued that all evidence from the inception of the contract – or at least evidence indicating breach subsequent to the conclusion of the first arbitration – should be considered.  Again, this second arbitration took place in Chicago and FMNA was represented by Anderson.  On August 5, 2002, the second arbitrator denied Colmar's claims, finding as follows: 

"In the First Award, after providing a detailed and reasoned analysis for his award in favor of [FMNA], Arbitrator Marinello concluded: 'This Award is in full settlement of all claims submitted to this arbitration.  All claims not expressly granted herein are, herby [
sic
] denied.'  On February 22, 2002 the Circuit Court of Cook County entered an Order confirming the First Award [Case No. 01 CH 16369].

By its election to seek relief through the Termination Date, [Colmar] has negated what might have been its ability to assert further claims under the Contract.  Among the goals of arbitration are to provide a 'final and binding determination' in a fair, prompt and economical manner.  None of these goals would be met by going forward with this case.  As counsel for [Colmar] has stated: 'This is not a complicated case.  It can be decided without the expense and delay of a hearing, solely on written briefs and evidence submitted by the parties.'  The First Arbitration and First Award have addressed and decided all of the issues relating to the current dispute."  

The arbitrator ordered that the contract be deemed terminated as of February 22, 2002; that FMNA return all materials to Colmar within 45 days, as set forth in the parties' contract; that 

the award fully settled all claims submitted in the second arbitration; and that all claims not expressly granted were denied.  

On August 28, 2002, plaintiff filed a case in the circuit court of Cook County seeking to vacate the second arbitration award, claiming that because FMNA was represented during both arbitrations by an attorney not licensed to practice law in Illinois, the arbitration awards were invalid.  FMNA filed a countermotion, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)), seeking to dismiss Colmar's complaint for failure to state a claim upon which relief could be granted.  FMNA noted that the second arbitrator specifically considered the effect of Anderson's status, which Anderson had fully disclosed, and found that his representation of FMNA created no controversy, in part, because the AAA rules permitted parties to be represented by nonattorneys in arbitration.  On November 7, 2002, the trial court granted FMNA's countermotion to dismiss and affirmed the second arbitrator's award.  Colmar timely filed its notice of appeal of this order on December 2, 2002.

Colmar argues on appeal that the trial court erred by not vacating the second arbitration award for the following reasons.  First, Colmar asserts that the award was void
 ab initio
 because FMNA was represented by an out-of-state attorney during arbitration.  Next, Colmar asserts that the arbitrator exceeded his authority in several respects and, therefore, the award should have been vacated on statutory grounds.  Finally, Colmar asserts that public policy mandates vacation of the award.  

Colmar additionally argues that the trial court's granting of FMNA's motion to dismiss Colmar's complaint was improper because the complaint (1) raised the issue of breach of fiduciary duty and (2) failed to decide the remaining issues regarding the materials to be returned to Colmar.  We are not persuaded by Colmar's arguments.  Thus, we hold that the trial court properly confirmed the second arbitration award and dismissed Colmar's complaint.

We review the trial court's decision to affirm the arbitrator's award for an abuse of discretion (
Everen Securities, Inc. v. A.G. Edwards & Sons, Inc.
, 308 Ill. App. 3d 268, 276 (1999)), while we review
 its section 2-615 dismissal
 of the complaint 
de novo
.  735 ILCS 5/2-615 (West 2002); 
Raintree Homes, Inc. v. Village of Long Grove
, 335 Ill. App. 3d 317, 319 (2002). 

A. Participation in Arbitration by Out-of-State Attorney
 

Colmar argues that Anderson's representation of FMNA during arbitration in Illinois rendered the resulting arbitration award void.  FMNA maintains, however, that Anderson's nonlicensure in Illinois was of no consequence because his representation took place during arbitration rather than a court proceeding.  FMNA notes that the AAA rules, to which the parties contractually agreed to be bound, permit a party to be represented by a nonattorney.  We recognize that, if the arbitration award were indeed void 
ab initio
, the trial court's order confirming it would be void as well.  See 
Eissman v. Pace Suburban Bus Division of the Regional Transportation Authority
, 315 Ill. App. 3d 574, 578 (2000).  

We are called upon to determine for the first time what effect, if any, an out-of-state attorney's representation of an out-of-state client during arbitration in Illinois has on an arbitration award.  We find that, for the reasons that follow, Anderson's representation has no effect on the arbitration award in this case.

        
The Attorney Act (the Act) provides that “[n]o person shall be permitted to practice as an attorney or counselor at law within this State without having previously obtained a license for that purpose from the Supreme Court of this State.”  705 ILCS 205/1 (West 2002).  
The general rule in Illinois provides that judgments that result from legal proceedings brought in a court of record on a party's behalf by a person who is not licensed to practice law in this state are void.  See 
Midwest Home Savings & Loan Ass’n v. Ridgewood, Inc.
, 123 Ill. App. 3d 1001 (1984) (where proceedings in a suit are instituted by a person not entitled to practice law in Illinois, such proceedings are a nullity and the suit will be dismissed; if the cause has proceeded to judgment, the judgment is void and will be reversed
)
; 
Blue v. People
, 223 Ill. App. 3d 594, 596 (1992) (
if one is not duly authorized to practice law, he or she may not represent another in a court of law)
;
 
People v. Dunson
, 316 Ill. App. 3d 760, 764 (2000)
 (the prosecution of a defendant by a prosecutor who was not licensed to practice law in Illinois is void). 
 Colmar argues that this rule, when applied in this case, requires us to vacate the arbitration award.  
We find, however, that the cases applying the general voidance rule are distinguishable and do not lend support for our extension of the rule to the instant case. 
 

We begin by noting that, while it is true that the courts have found that an attorney need not necessarily appear in court in order to engage in the practice of law, and that acts such as giving advice or rendering service that requires the use of any degree of legal knowledge or skill may indeed implicate the rule against unauthorized practice (
People ex rel. Chicago Bar Ass’n v. Tinkoff
, 399 Ill. 282, 288 (1948); 
People ex rel. Chicago Bar Ass’n v. Barasch
, 406 Ill. 253, 256 (1950); 
Lozoff v. Shore Heights, Ltd.
, 35 Ill. App. 3d 697, 700 (1976), 
aff’d
, 66 Ill. 2d 398 (1977)), no Illinois court has specifically found that an out-of-state attorney's participation in arbitration proceedings constitutes the unauthorized practice of law in Illinois.  
This fact is significant in this case because it distinguishes the situation before us – where the disputed action is the participation in 
arbitration
, and not 
court
 proceedings
 – from that considered by the courts in the cases applying the general voidance rule.

No Illinois decision has considered whether the general voidance rule applies to cases where the representation occurred strictly during arbitration proceedings.  After considering the applicable Illinois cases, the modern trend in the jurisprudence of multijurisdictional practice, and the public policy reasons promoting both the rule prohibiting unauthorized practice and the general voidance rule, we find that the harsh general rule should not be applied in the instant case. 
 As noted by FMNA, the AAA rules, to which the parties contractually agreed to be bound, do not
 require that the party’s representative be an attorney
.  
American Arbitration Association, Commercial Dispute Resolution Procedure, Commercial Arbitration Rule R-26 (Jan. 1, 2003) 
(“Any party may be represented by counsel or other authorized representative”). 
Offering federal cases in support, FMNA further asserts that arbitration is not a judicial proceeding but, rather, an alternative to such a proceeding, given that judicial fact finding, court procedures, evidentiary rules, and other characteristics of the judicial process do not apply in the arbitration context.  
Alexander v. Gardner – Denver Co.
, 415 U.S. 36, 57-58, 39 L. Ed. 2d 147, 163, 94 S. Ct. 1011, 1024 (1974) (the fact-finding process in arbitration usually is not equivalent to judicial fact finding; the record of arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable); 
Connecticut General Life Insurance Co. v. Sun Life Assurance Co. of Canada
, 210 F.3d 771, 774 (7th
 
Cir. 2000) ("The arbitration of contractual disputes pursuant to an arbitration clause in the contract is not a stage in a judicial proceeding but an alternative to such a proceeding")
.  
We agree with FMNA and note that
 the Illinois courts have recognized these differences as well.  For example, the supreme court has observed:

"[Arbitration] is different from the court system.  It does not rely upon legal precedent.  Instead, it provides for all questions of law and fact to be determined by the arbitrator. [Citation.]  Although arbitrators are not foreclosed from employing the rules of procedure, evidence or discovery of legal proceedings, they are required only to conduct the arbitration in a manner not inconsistent with the guidelines of the Uniform Arbitration Act [citation].  These differences are sanctioned because the parties willingly accept the absence of these safeguards in return for a final and speedy resolution of their conflict."  
Drinane v. State Farm Mutual Automobile Insurance Co.
,  153 Ill. 2d 207, 212 (1992). 

See also 
Hawrelak v. Marine Bank Springfield
, 316 Ill. App. 3d 175, 181 (2000) 
(
the arbitration system is essentially structured without due process, rules of procedure, rules of evidence, or any appellate procedure – thus, while certain acts might present a serious issue in trial court proceedings, they may be of no consequence in arbitration proceedings);  
Tim Huey Corp. v. Global Boiler & Mechanical, Inc.
, 272 Ill. App. 3d 100, 111 (1995), 
quoting 
Stroh Container Corp. v. Delphi Industries, Inc.
, 783 F.2d 743, 751 n. 12 (8th Cir. 1986
)
 (
" 'Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication' "); and 
Perez v. Leibowitz
, 215 Ill. App. 3d 900, 902-03 (1991)
 (arbitration is a substitute for a court proceeding and form of settlement for litigation, but not a trial; the purpose of arbitration is the disposition of litigation in an easier, quicker, and more economical manner than by litigation; to hold that arbitration was equivalent to a trial or hearing would extend the meaning of those terms beyond their intended meaning and would be contrary to the purpose of arbitration).   

This distinction between arbitration and court proceedings is significant in this case.  We note that if Anderson had sought to represent FMNA in court, he would have applied for, and more than likely been granted, 
pro hac vice
 admission pursuant to 
Supreme Court Rule 707 and the Attorney Act (
145 Ill. 2d R. 707 ("[A]n attorney and counselor-at-law from any other jurisdiction in the United States, or foreign country, may in the discretion of any court of this State be permitted to participate before the court in the trial or argument of any particular cause in which, for the time being, he or she is employed"); 
705 ILCS 205/12 (West 2002)
 (
"When any counselor or attorney at law, residing in any other state or territory, may desire to practice law in this state, such counselor or attorney shall be allowed to practice in the several courts in this state upon the same terms and in the same manner that counselors and attorneys at law residing in this state now are or hereafter may be admitted to practice law in such other state or territory")
), as such admission is routinely granted.  However, there is no corresponding 
procedure allowing for 
pro hac vice
 admission of an out-of-state attorney to represent a client in arbitration proceedings in Illinois.  
This 
discrepancy can lead to problems for transactional and other attorneys who represent clients in matters out of court.  
See Restatement (Third) of Law Governing Lawyers §3, Comment 
e
 (2000) ("Transactional and similar out-of-court representation of client may raise similar issues, yet there is no equivalent of temporary admission
 
pro hac vice for such representation, as there is in litigation.  Even activities that bear close resemblance to in-court litigation, such as representation of clients in arbitration or in administrative hearings, may not include measures for pro hac vice appearance
").  
Attempting to resolve the problem, the Restatement offers:

"A lawyer currently admitted to practice in a jurisdiction may provide legal services to a client: (1) at any place within the admitting jurisdiction; (2) before a tribunal or administrative agency of another jurisdiction or the federal government in compliance with requirements for temporary or regular admission to practice before that tribunal or agency; and (3) at a place within a jurisdiction in which the lawyer is not admitted to the extent that the lawyer's activities arise out of or are otherwise reasonably related to the lawyer's practice under Subsection (1) or (2)." Restatement (Third) of Law Governing Lawyers §3 (2000).  

Explaining how to determine what activities are permissible under the rules prohibiting the unauthorized practice of law,
 the Restatement provides the following,

"When other activities of a lawyer in a non-home state are challenged as impermissible for lack of admission to the state's bar, the context in which and purposes for which the lawyer acts should be carefully assessed.  Beyond home-state activities, proper representation of clients often requires a lawyer to conduct activities while physically present in one or more other states.  Such practice is customary in many areas of legal representation.  As stated in Subsection (3), such activities should be recognized as permissible so long as they arise out of or otherwise reasonably relate to the lawyer's practice in a state of admission.  In determining that issue, several factors are relevant, including the following: whether the lawyer's client is a regular client of the lawyer or, if a new client, is from the lawyer's home state, has extensive contacts with that state, or contacted the lawyer there; whether a multistate transaction has other significant connections with the lawyer's home state; whether significant aspects of the lawyer's activities are conducted in the lawyer's home state; whether a significant aspect of the matter involves the law of the lawyer's home state; and whether either the activities of the client involve multiple jurisdictions or the legal issues involved are primarily either multistate or federal in nature."
  Restatement (Third) of Law Governing Lawyers §3, Comment 
e
 (2000).

In this case, the relevant factors weigh in favor of our finding that Anderson's activities were authorized primarily because they related to his regular representation of FMNA in California and involved issues that were not specific to Illinois law.

While the Restatement stops short of creating an express exemption from the rules of unauthorized practice for out-of-state attorneys participating in arbitration proceedings, 
the ABA Commission on Multijurisdictional Practice (MJP Commission) has recently proposed a model rule which does just that.  Model Rule 5.5(c) specifically permits an out-of-state attorney to represent a party in alternative dispute resolution (ADR) proceedings
, providing as follows:

“A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that: 

* * *

(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer’s practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission[.]” Model Rules of Prof'l Conduct R. 5.5 (2002).   

In its Report to the House of Delegates, the MJP Commission offered the following rationale: “It is generally recognized that, in the ADR context, there is often a strong justification for choosing a lawyer who is not admitted to practice law in the jurisdiction in which the proceeding takes place but who has an ongoing relationship with the client, who is admitted to practice in the jurisdiction in which the client is located, or has developed a particular knowledge or expertise that would be advantageous in providing the representation.  Admission to practice law in the jurisdiction in which the proceeding takes place may be relatively unimportant, in part, because the jurisdiction may have no relation to the law governing the proceeding or to the dispute.  Unlike litigation, in ADR parties may select the site of the proceeding simply on the basis of convenience.  At times, as in the case of international arbitrations, a site is chosen precisely because it has no connection to either party or to the dispute.  Thus, in ADR proceedings, the in-state lawyer is not ordinarily better qualified than other lawyers by virtue of greater familiarity with state law, state legal processes and state institutions.  Further, as noted by the ABA Section of Litigation in its comments to the Commission, 'Clients have important considerations in ADR, which include confidentiality, consistency, uniformity, costs, and convenience.  Denying a client her preferred counsel could hamper early ADR efforts and impede prompt resolution of disputes.' ” ABA Comm. on Multijurisdictional Practice, Report to the House of Delegates, Report 201B, at 11-12 (2002), at http://www.abanet.org/cpr/mjp-home.html.

Though the ABA Model Rule 5.5 has not been adopted by the Illinois Supreme Court at the time that we decide this case, we find it persuasive in that it reflects the modern trend in the law of multijurisdictional practice and is also in keeping with well-reasoned decisions from other jurisdictions
 that have found that an out-of-state attorney's representation of a client during arbitration does not violate the rules prohibiting the unauthorized practice of law.  See,
 e.g.
, 
Williamson v. Quinn Construction Corp
., 537 F. Supp. 613 (S.D.N.Y 1982)
.  In 
Williamson
, the federal district court in New York confronted facts which are similar to those in this case
 and 
found that an out-of-state attorney’s representation of a party in a commercial arbitration did not constitute the unauthorized practice of law.  Though 
Williamson
 involved a New Jersey law firm’s action seeking compensation for legal services rendered in an arbitration proceeding in New York, rather than an seeking voidance, the following rationale is applicable in the instant case:

“[The] services were rendered solely in the arbitration proceeding.  An arbitration tribunal is not a court of record; its rules of evidence and procedures differ from those of courts of record; its fact finding process is not equivalent to judicial fact finding; it has no provisions for the admission 
pro hac vice
 of local or out-of-state attorneys.”  
Williamson
, 537 F. Supp. 
at 616.

In addition, 
the New Jersey Supreme Court Committee on Unauthorized Practice found that an out-of-state attorney was authorized to appear before a panel of the AAA in New Jersey to present evidence and argue questions of substantive law on behalf of a client with a claim for breach of contract against a former employer.  1994 WL 719208 (N.J. Comm. Unauth. Prac. Opinion No. 28).  The Committee relied in substantial part on 
Williamson
, and the aforementioned AAA rules permitting representation by nonlawyers.
 

We recognize that the court in 
Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court
, 17 Cal. 4th
119, 949 P. 2d 1, 70 Cal. Rptr. 2d 304 (1998) recently arrived at a conclusion different
 from that in 
Williamson
.  
Birbrower
 
involved a New York law firm retained in New York by New York and California corporations to conduct arbitration in a contract dispute governed by California law.  The court found that the firm engaged in the unauthorized practice of law in California by virtue of this conduct.  However, both the Restatement and ABA Commission have criticized 
Birbrower
 as creating too harsh a result.  We agree and, therefore, decline to follow it.
(footnote: 2)
 Inasmuch as there is no law in Illinois interpreting the rules regarding the unauthorized practice of law as prohibiting an attorney from another state from participating in arbitration, we are inclined to employ 
the reasoning articulated by the Restatement, the ABA Commission
 and the court in 
Williamson
 to the facts in this case, and find that Anderson's participation in the arbitration was not unauthorized. 

Furthermore, in determining whether to apply the general voidance rule in this case, we find significance in the fact that the courts have created exceptions to the rule, even in cases where the representation took place during a court proceeding, when a dismissal or voidance would not promote the policy for which the rule was developed. 
   

In 
Janiczek v. Dover Management Co.
, 134 Ill. App. 3d 543 (1985)
, the court considered whether to nullify a judgment in a personal injury claim where the action was filed by an attorney who was disbarred at the time of the filing, but had been duly licensed when retained by the client.  T
he 
Janiczek
 court noted that the policy governing the prohibition from practicing law
 of persons not duly licensed is 
to protect the litigants from the mistakes of those ignorant of the law and the schemes of the unscrupulous and to protect the court itself in the administration of its proceedings from those lacking the requisite legal skills. 
 
Janiczek
,
 
134 Ill. App. 3d at 546.  
Finding that this above-mentioned policy of protecting litigants would not be served by dismissal, the 
Janiczek
 court allowed the plaintiff to proceed to trial with substituted counsel.  The 
Janiczek
 court focused on the plaintiff's lack of awareness of his attorney's status and found a vacation of the filing would create an unfair result for the plaintiff.   

The court in 
Fruin v. Northwestern Medical Faculty Foundation, Inc.
, 194 Ill. App. 3d 1061 (1990),
 later declined to extend the 
Janiczek
 decision in considering whether 
a medical malpractice complaint signed by Wisconsin lawyer not licensed in Illinois
 
was a nullity.  In declining to deviate from the general rule, the
 
Fruin
 court noted that the out-of-state attorney's "failure to ensure that he obtained the necessary authorization to practice in another state cannot justify a deviation from that state's rules."  
Fruin
, 194 Ill. App. 3d at 1064.  We note, again, that Illinois has no corresponding 
pro hac vice
 rule for admission for arbitration, and thus 
Fruin
 is distinguishable. Furthermore, we note that 
Fruin
 has been criticized as providing a result that is "too harsh."  
McEvers v. Stout
, 218 Ill. App. 3d 469, 472 (1991)
.  
In 
McEvers
, the 
court 
declined to follow 
Fruin
 and, instead, adopted the reasoning of 
Janiczek
, ultimately finding that the fact that a complaint was filed by an out-of-state attorney did not render the filing a nullity.  
McEvers
, 218 Ill. App. 3d at 472.  The 
McEvers
 court recognized that some circumstances called for an exception to the rule voiding the judgments obtained by persons not licensed to practice in Illinois.  The court reasoned: 

"[Supreme Court Rule 707] recognizes that attorneys not licensed in Illinois may well have the requisite expertise to practice in specific cases.  Lawyers practicing in Illinois without an Illinois license are subject to the contempt powers of our courts. [Citation.]  In light of the relative ease with which an out-of-State attorney may obtain permission for limited practice in Illinois and the existence of the contempt powers, we find unnecessary injustice will occur if we follow the 
Fruin
 decision.  

Underlying our decision is the recognition that a nullity rule appears to punish the litigant rather than the offending attorney.  This might be advisable, if we could legitimately assume that litigants are aware of the rules relating to the practice of law.  Assuming such would be unreasonable.  The suggestion that plaintiffs should have known of [their attorney's] problem with practicing in Illinois is somewhat ludicrous, in light of the fact that defense counsel evidently did not recognize the problem for more than six months after the complaint was filed.  The contempt powers provided for the proper placement of a penalty.  The nullity rule results in an improper placement of that penalty."  
McEvers
, 218 Ill. App. 3d at 472. 

The 
McEvers
 court further noted that 
Fruin
 was based primarily on cases involving representation by nonlawyers.  
McEvers
, 218 Ill. App. 3d at 471.

Following 
McEvers
, the court in 
People v. Lopez
, 242 Ill. App. 3d 160 (1993), considered whether a defendant's sixth amendment right to counsel had been violated due to the fact that his defense counsel was an attorney who was not licensed, nor admitted 
pro hac vice
, in Illinois
. 
 The 
Lopez
 court declined to adopt a 
per se
 rule equating nonlicensure with incompetency and held that the out-of-state counsel's performance was sufficient, reasoning as follows:

"Just as the grant of a petition to proceed 
pro hac vice
 does not guarantee that an attorney will practice law in a competent manner, the failure to file a petition to proceed 
pro hac vice
 or to enter an order allowing such a petition does not necessarily imply that the out-of-State attorney will perform in an incompetent manner."  
Lopez
, 242 Ill. App. 3d at 169. 

We find it significant in the above-mentioned decisions, the courts 
recognized exceptions to the general rule despite their acknowledgment that "due to the different procedural and evidentiary requirements of the various States * * * there is good reason to restrict the practice in Illinois to those persons licensed by the supreme court."  
McEvers
, 218 Ill. App. 3d at 471-72; 
Lopez
, 242 Ill. App. 3d at 168
.
  I
n this case, the act in question took place in arbitration and, thus, there is no such concern regarding different rules of procedure and evidence.  In addition, we note that
 Colmar has failed to even allege that he was harmed by
 
Anderson's
 conduct or that any wrong occurred as a result of the representation other than the mere procedural defect
.  Thus, we fail to see how the policy that underlies the invalidation of judgments procured through the unauthorized practice of law would be advanced by our application of the harsh general rule in this case.  See 
People v. Woodall
, 333 Ill. App. 3d 1146, 1161 (2002) (in considering defendant's request to nullify his multiple convictions on the basis that the prosecutor, though a licensed attorney, was not duly appointed to prosecute him, the 
court found "no reason" to overturn the defendant's convictions, in part, because the defendant did not attempt to demonstrate the harm visited upon him by his prosecutor's defective commission to prosecute).  
Accordingly, we 
decline to extend the general rule to apply to situations where an out-of-state attorney represents a client in arbitration in Illinois
.  

B. Exceeding the Arbitrator's Powers 

Colmar next claims that the award should be vacated pursuant to the Uniform Arbitration Act because the arbitrator exceeded his power in making the award.  See 710 ILCS 5/12(a)(1) through (4)(a) (West 2002) (an award may be vacated where (1) procured by corruption, fraud, or other undue means; (2) there was evident partiality or misconduct on the part of the arbitrators; (3) the arbitrators exceeded their powers; or (4) the arbitrators refused to postpone a hearing upon sufficient cause or to hear material evidence, so as to prejudice the rights of a party).  Specifically, Colmar claims that the arbitrator exceeded his authority by: (a) allowing Anderson to represent FMNA; (b) refusing to hear evidence material to the controversy and failing to require defendant to produce evidence showing that it actively and aggressively marketed the film; and (c) declaring the contract terminated as of February 22, 2002.   

It is important to note from the outset that 
the scope of judicial review of an arbitration award is nothing like the scope of an appellate court's review of a trial court's decision.  
Hawrelak,
 316 Ill. App. 3d at 178, citing 
American Federation of State, County & Municipal Employees v. Department of Central Management Services
, 173 Ill. 2d 299, 304 (1996) (hereinafter 
AFSCME
).  There is a presumption that an arbitrator did not exceed his authority (
Hawrelak
, 316 Ill. App. 3d at 178 ),
 and if the arbitrators have acted in good faith, the award is conclusive upon the parties (
Garver v. Ferguson
, 76 Ill. 2d 1, 7-8 (1979)).  Such deference is accorded because the parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of that choice.  
Tim Huey Corp.
, 272 Ill. App. 3d at106.  In accordance with this standard, we find that the arbitrator did not exceed his authority by allowing Anderson to participate in the arbitration.  

Referring to our previous discussion regarding the unauthorized practice of law, we note that there is no authority which explicitly prohibits an out-of-state attorney from representing a client in arbitration in Illinois.  Thus, the arbitrator correctly determined that Anderson could participate.  Furthermore, even if the arbitrator had committed an error of fact or misinterpreted applicable law in making that determination, we would not vacate the award merely on that basis.  See 
Perkins Restaurants Operating Co. v. Van Den Bergh Foods Co.
, 276 Ill. App. 3d 305, 309-11 (1995)
.  Instead, we would uphold the award as long as the arbitrator's decision was reasonable – even if we would have reached a different result.   
Perkins
, 276 Ill. App. 3d at 310.
 In this case, it was reasonable for the arbitrator to allow Anderson to participate in the arbitration. 

Colmar further argues that the arbitrator exceeded the scope of his authority by excluding evidence and by finding the contract to have been terminated on February 22, 2001.  The record reveals, however, that the arbitrator made this decision in reliance on the findings of the previous arbitrator.  Because the record does not contain the pleadings, award, or trial court order resulting from the first arbitration, Colmar has failed to satisfy its burden of presenting a sufficiently complete record to support a claim of error, and we will resolve any that arise from the incompleteness against Colmar.  See 
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).  Accordingly, we find that the arbitrator did not exceed his authority in either respect.

C. Public Policy 

Finally, we address Colmar's policy argument, noting that, in addition to the statutorily provided reasons for vacating an arbitration award, the courts have recognized a public policy exception, which is grounded in the common law.  
AFSCME
, 173 Ill. 2d at 306-07.  This exception, however, is narrow and invoked only when there has been a clear contravention of a well-defined, dominant and public policy that is ascertainable from the laws and legal precedents and not from generalized considerations of supposed public interests.  
AFSCME
, 173 Ill. 2d at 306-07. 
 Application of the public policy exception requires a two-step analysis: (1) whether a well-defined and dominant public policy has been identified; and (2) if so, whether the arbitrator's award violated that public policy.  
AFSCME
, 173 Ill. 2d at 307-08.  Colmar fails to meet its burden by not identifying a well-defined and dominant public policy. 

D. Section 2-615 Dismissal

We next consider Colmar's argument that the trial court erred by granting FMNA's section 2-615 motion to dismiss Colmar's complaint alleging that the parties have a fiduciary relationship and that an issue remained as to the return of certain materials to Colmar.  The question presented by a section 2-615 motion to dismiss is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Hough v. Kalousek
, 279 Ill. App. 3d 855, 862, (1996).  Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint.  
Hough
, 279 Ill. App. 3d at 863.  The plaintiff is not required to prove his or her case, but must allege sufficient facts to state all the elements of the asserted cause of action.  
Inland Real Estate Corp. v. Tower Construction Co.
, 174 Ill. App. 3d 421, 433 (1988).  When ruling on a section 2-615 motion to dismiss, the trial court should admit all well-pleaded facts as true and disregard legal and factual conclusions that are unsupported by allegations of fact.  
Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc
., 275 Ill. App. 3d 452, 456-57 (1995).  If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the trial court must grant the motion to dismiss.  
Lake County Grading Co.
, 275 Ill. App. 3d at 457.  As previously mentioned, the standard of review on a section 2-615 dismissal is 
de novo
 and we may affirm upon any grounds for which a factual basis exists in the record.  
Jackson v. Chicago Board of Education
, 192 Ill. App. 3d 1093, 1099 (1989); 
Village of Arlington Heights v. National Bank of Austin
, 53 Ill. App. 3d 917, 919-20 (1977).  

It is well-established that parties to a contract do not stand in a fiduciary relationship to one another.  See 
McErlean v. Union National Bank of Chicago
, 90 Ill. App. 3d 1141, 1148-49 (1980).  Not one of the cases cited by Colmar in support of its claim for breach of fiduciary duty establishes that FMNA owed any such duty.  Thus, because Colmar's claim is based on nothing more than the parties' contractual relationship and plaintiff's alleged trust in FMNA, no claim for breach of fiduciary duty has been established and the complaint does not survive on that basis.

In regard to the materials sought to be returned, we note that the second award expressly addresses this issue.  
Furthermore, the award states that such matters were previously considered during the first arbitration.  Because plaintiff never filed an appeal to contest the validity of the first arbitration award, the second arbitration is valid where it relies on that first order – 
res judicata
 bars defendant from raising issues in his complaint as to the second award which were previously raised and decided in regard to the first award
.  See 
Peregrine Financial Group, Inc. v. Ambuehl
, 309 Ill. App. 3d 101, 107 (1999) (if arbitration actions involve issues previously reached, they are barred by 
res judicata
, notwithstanding the parties' contractual rights to bring such actions). 

Accordingly, we hold that the trial court properly: (1) confirmed the arbitration award; and (2) dismissed Colmar's complaint for failure to state a claim upon which relief could be granted. 

Affirmed.

HARTMAN and THEIS, JJ., concur.

FOOTNOTES
1: The record does not include the pleadings, arbitrator's award, or the trial court's order from the first arbitration.

2: 
We find it interesting that following 
Birbrower
, 
California adopted a 
pro hac vice
 type provision for out-of-state attorneys involved in arbitration.
  See Cal. Civ. Proc. Code §1282.4 (West 2002).  Inc
identally, Colmar incorrectly cites this 
California
 rule as authority in support of his argument that Anderson failed to follow the proper procedure 
in Illinois
 for appearing 
pro hac vice
.