# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Clanton v. Ray*, 2011 IL App (1st) 101894

---

| | |
|---|---|
| Appellate Court Caption | STEVEN CLANTON, Plaintiff-Appellant, v. PURNIMA RAY, Defendant-Appellee.–STEVEN CLANTON, Plaintiff, v. MUNDEEP K. RAINA, Defendant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-1894 |
| Filed<br>Rehearing denied | December 30, 2011<br>October 23, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff's separate suits for his injuries arising from two unrelated automobile accidents were consolidated and the parties agreed to voluntary binding arbitration with the further agreement that defendants' liability would be limited to the extent that the first defendant would be liable for no less than $250,000 and no more than $600,000, and the second defendant's liability would be fixed at $90,250, and the arbitration agreement barred disclosing the "high/low agreements" to the arbitrator, the trial court's judgment on the arbitrator's award, as "clarified" pursuant to the first defendant's motion, was remanded for further proceedings with restrictions on defendants' ability to select the same arbitrator, since that arbitrator had knowledge of the "high/low agreement" and it was impossible to determine that plaintiff was not prejudiced. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 04-L-7549, 07-L-1748 cons.; the Hon. Donald J. Suriano, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on          Alvin R. Becker and Stefania Pialis, both of Beerman Swerdlove LLP, of
Appeal              Chicago, for appellant.

                    Michael J. Urgo, Jr., of Urgo & Nugent Ltd. and Michael Resis, of
                    SmithAmundsen LLC, both of Chicago, for appellee.


Panel               JUSTICE J. GORDON delivered the judgment of the court, with opinion.
                    Presiding Justice Epstein and Justice McBride concurred in the judgment
                    and opinion.

## OPINION

¶ 1    Plaintiff Steven Clanton appeals from the circuit court's confirmation of an arbitration award.

¶ 2    Clanton was involved in two unrelated automobile accidents. The first was on November 9, 2001, with a vehicle driven by defendant-appellee Purnima Ray, and the second was on July 8, 2002, with a vehicle driven by defendant Mundeep Raina. Clanton filed separate suits against Ray and Raina seeking compensation for his injuries. The suits were subsequently consolidated into the present action.

¶ 3    The parties agreed to participate in voluntary binding arbitration. As part of their arbitration agreement, the parties agreed to limit defendants' liability as follows: Clanton's award against Ray would be no less than $250,000 and no more than $600,000, while Clanton's award against Raina would be fixed at $90,250. (It was understood by the parties that Raina had limited insurance coverage in the amount of $90,250, while Ray was insured by two insurance policies whose combined coverage was $1,250,000.) The arbitration agreement specifically barred the parties from disclosing these "high/low agreements" to the arbitrator.

¶ 4    On March 26, 2010, the arbitrator issued an opinion finding that Clanton suffered $550,000 in damages, that his damages were indivisible, and that "[e]ach defendant is liable at the percentage of 50%." Thereafter a dispute arose between Ray and Clanton as to the amount that Ray owed Clanton pursuant to the award. Ray contended that, under the plain text of the opinion, she owed only 50% of $550,000, that is, $275,000, notwithstanding the fact that Raina owed only $90,250 under the high/low agreement. Clanton contended that, under the doctrine of joint and several liability, Ray was liable for the entire balance of the $550,000 judgment not being paid by Raina, that is, $459,750. (The amount of Raina's liability is not in dispute.)

¶ 5    Ray filed a motion in the circuit court requesting that the court remand the case to the arbitrator for clarification of the award, and the circuit court granted her motion. On May 6, 2010, the arbitrator issued a new award entitled "Arbitration Award–Clarified" in which he stated, "The doctrine of joint and several liability is not applicable due to the ADR Systems

high/low limits for each defendant in the contract." (The record does not reveal who disclosed the high/low limits to the arbitrator despite the fact that such disclosure was forbidden under the terms of the arbitration agreement.) The arbitrator further stated that, "[p]ursuant to the agreed arbitration conditions," Ray was to pay $275,000 to Clanton.

¶ 6    Pursuant to this award, and over Clanton's objection, the circuit court entered judgment against Ray for $275,000 and against Raina for $90,250. Clanton now appeals. For the reasons that follow, we reverse and remand.

¶ 7                                    I. BACKGROUND

¶ 8    Because a detailed recitation of the facts in the underlying tort actions is not material to this appeal, we shall summarize those facts briefly.

¶ 9    On November 25, 2003, Clanton filed a negligence action against Ray in the circuit court of Du Page County, seeking damages for bodily injuries he allegedly sustained as a result of a collision between his automobile and Ray's automobile on November 9, 2001. Ray filed an answer denying all allegations of negligence. The parties proceeded to exchange discovery and litigate the lawsuit. On July 6, 2004, Clanton filed a negligence action against Raina in the circuit court of Cook County, seeking damages for bodily injuries he allegedly sustained as a result of a collision between his automobile and Raina's automobile on July 8, 2002. Raina filed an answer likewise denying all allegations of negligence. Both actions were subsequently consolidated in Cook County.

¶ 10   On October 21, 2009, all parties agreed to participate in voluntary binding arbitration to be conducted by ADR Systems of America, L.L.C. The parties executed an ADR Systems binding arbitration agreement setting forth the terms of the arbitration. As part of this agreement, the parties agreed to limit defendants' liability as follows:

"The Parties agree that for insurance **claim # 13-7558-442** [Clanton's claim against Ray] the minimum award to Steven Clanton will be **$250,000.00.** Also, the maximum award to Steven Clanton will be **$600,000.00.** These amounts represent the minimum and maximum amounts of money that State Farm Insurance shall be liable to pay to Steven Clanton.

The Parties agree that for Steven Clanton's claim against Dr. Mundeep Raina, the minimum and maximum award to be derived, inclusive of insurance claims, shall be $90,250.00." (Emphasis in original.)

The parties further agreed not to disclose this high/low agreement to the arbitrator:

"4. The Parties agree that they will not disclose any and all dollar figures, any settlement negotiations, the terms of any applicable insurance policy, high/low agreements between the Parties or any set-offs, whether they are MPC set-offs or set-offs from an underlying policy, orally or in writing, to the Arbitrator at any time before or during the Arbitration (including during any pre-hearing conference or at the hearing, or at any time prior to the Arbitrator's final decision).

a. Violation of the rule set forth in Paragraph (C)(4) shall constitute a material breach of the agreement."

¶ 11    As a result of the parties' agreement to enter into binding arbitration, the trial court entered an order on October 27, 2009, dismissing the consolidated cases with prejudice, with the court retaining jurisdiction to effectuate and enforce the settlement.

¶ 12    The parties proceeded to arbitration on November 3, 2009. Thereafter, on March 26, 2010, the arbitrator rendered an arbitration award (the March 26 award) which stated:

> "Finding in favor of: π [Clanton]
>
> Gross Award: $550,000
>
> See opinion as to comparative percentage for the Defendants."

¶ 13    In the accompanying memorandum opinion, after summarizing the testimony of the parties, the testimony of the parties' medical experts, and Clanton's documentary evidence as to his medical expenses and lost wages, the arbitrator issued the following findings:

> "1. The injuries suffered by plaintiff are indivisible.
>
> 2. The plaintiff is not contributory [*sic*] negligent from first motor vehicle accident of November 29, 2001 with defendant Ray.
>
> 3. The plaintiff did not mitigate his damages due to smoking. The smoking of the [plaintiff] was considered in entering the overall Award.
>
> 4. Each defendant is liable at the percentage of 50%.
>
> AWARD: 550,000.00."

¶ 14    On April 23, 2010, following the issuance of the March 26 award, Clanton filed a motion in the trial court entitled "Plaintiff's Motion to Enter Judgment and Enforce the Arbitration Award." In that motion, he contended, as he does in the instant appeal, that the March 26 award made Raina and Ray jointly and severally liable for the sum of $550,000, which would leave Ray liable for $459,750, representing that portion of the judgment not owed by Raina pursuant to the high/low agreement. Attached to Clanton's motion was a copy of the arbitration agreement between the parties.

¶ 15    In response, on April 30, 2010, Ray filed a motion in the trial court in which she requested that the trial court remand the award to the arbitrator for clarification because "the clear language of the Arbitration award seemingly leaves room for interpretation." She did not elaborate upon what alternatives or inconsistencies might be gleaned from the language of the award. However, in support of her motion, Ray attached a letter from her counsel to ADR Systems, dated April 27, 2010, in which her counsel requested that the arbitrator issue a "clarification" of the award to make it clear that Ray would only be liable for 50% of $550,000, that is, $275,000. In that letter, Ray's counsel stated, "[T]he plaintiff attorney has filed a Motion in court to reduce the award to a judgment in a manner in which he attempts to obtain more than $275,000.00 from my client based upon the previously agreed hi/low parameters." Ray's counsel did not elaborate upon the terms of the high/low agreement in that letter.

¶ 16    The trial court granted Ray's motion on April 30, 2010, and entered an order remanding the case to ADR Systems "to clarify the award entered March 26 2010 as to the liability of both defendants as to the issue of joint and several liability." The court did not rule at that time upon Clanton's motion to reduce the award to a judgment.

¶ 17 On May 6, 2010, the arbitrator issued an "Arbitration Award–Clarified" (the May 6 award). In that award, the arbitrator states:

> "The doctrine of joint and several liability is not applicable due to the ADR Systems high/low limits for each defendant in the contract. The arbitrator's award is subject to the parties agreed ADR Systems high/low limits in the arbitration agreement, which limits the amount each defendant is liable for. These amounts were not disclosed to the arbitrator prior to the March 26, 2010 arbitration decision.
>
> Pursuant to the agreed arbitration conditions, and the decision of March 26, 2010, I am clarifying the following amounts that are owed as follows from each defendant:
>
> Purnima Ray to pay $275,000 to Steven Clanton
>
> Dr. Mundeep Raina to pay $90,250 to Steven Clanton."

¶ 18 On May 25, 2010, Clanton renoticed his original motion in the circuit court seeking enforcement of the original March 26 award and filed a memorandum in its support. In that memorandum, Clanton alleged that, on May 3, 2010, the arbitrator was presented with a copy of the trial court's remand order as well as a copy of Clanton's original motion of April 23, 2010, seeking enforcement of the arbitration award. That motion, as previously noted, had attached to it a copy of the parties' arbitration agreement containing the details of the high/low agreements between the parties. In his memorandum, Clanton urged that the May 6 award following the remand was improper, and he therefore urged the court to instead confirm the original award of March 26, pursuant to which he contended that Ray would be liable in the amount of $459,750. (Clanton does not disclose, either in the record below or in his briefs on appeal, who presented the arbitrator with his original motion.)

¶ 19 The trial court denied Clanton's motion on June 3, 2010, finding that, in issuing the May 6 award, the arbitrator had complied with the court's request for clarification on the issue of joint and several liability.

¶ 20 On June 21, 2010, the trial court ordered the entry of judgment in Clanton's favor against Ray in the amount of $275,000 and against Raina in the amount of $90,250. The trial court further noted that the judgment against Ray was satisfied in open court by Ray's tender of two drafts totaling $275,000.

¶ 21 Clanton timely filed the instant appeal. Defendants do not raise any cross-appeal.

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, Clanton raises two main contentions of error. First, he contends that the trial court erred in remanding the March 26 award to the arbitrator for clarification, because Ray's request for clarification was untimely, and, in any event, the award was not in need of clarification. Second, Clanton contends that the May 6 award must be vacated because: (1) the arbitrator exceeded his authority by taking the high/low limits into account in rendering that award, (2) the arbitrator exceeded his authority by entering what was, in effect, a modification rather than a clarification, and because (3) a gross error of law appears upon the face of the award, since, contrary to the arbitrator's implication, the existence of a high/low agreement does not preclude the application of joint and several liability. Ray disputes all of

these contentions, as shall be developed below.

¶ 24    In considering Clanton's contentions, we are mindful that, unlike review of a lower court's decision, judicial review of an arbitration award is "extremely limited." *Anderson v. Golf Mill Ford, Inc.*, 383 Ill. App. 3d 474, 479 (2008). Because the parties have agreed that their dispute shall be settled by an arbitrator, the court should not vacate an award simply because its interpretation differs from that of the arbitrator. *Galasso v. KNS Cos.*, 364 Ill. App. 3d 124, 131 (2006); *Board of Education of the City of Chicago v. Chicago Teachers Union, Local No. 1*, 86 Ill. 2d 469, 478 (1981) ("Because the arbitrator's decision was bargained for, the courts would have no business overruling the arbitrator's interpretation even if they disagreed."). Thus, an award may not be vacated for mere errors in judgment or mistakes of fact or law. *Sloan Electric v. Professional Realty & Development Corp.*, 353 Ill. App. 3d 614, 621 (2004). However, an award may be vacated where "a *gross* error of law or fact appears on the award's face." (Emphasis in orginal.) *Id.*; see *Galasso*, 364 Ill. App. 3d at 131. A gross error of law exists only where it appears from the face of the award that the arbitrator was so mistaken as to the law that, if the arbitrator had been informed of the mistake, the award would have been different. *Chicago Teachers Union*, 86 Ill. 2d at 477. Moreover, the Illinois Uniform Arbitration Act (the Arbitration Act) presents five additional circumstances in which an arbitration award shall be vacated: (1) the award was procured by corruption or fraud, (2) there was evident partiality by an arbitrator appointed as a neutral party, or corruption in any arbitrator, (3) the arbitrators exceeded their powers, (4) the arbitrators refused to postpone the hearing upon a showing of sufficient cause, or refused to hear evidence material to the controversy, or (5) there was no arbitration agreement between the parties. 710 ILCS 5/12(a) (West 2008).

¶ 25        A. Whether the Trial Court Erred in Remanding the March 26 Award

¶ 26    In support of his contention that the trial court lacked authority to remand the March 26 award to the arbitrator for clarification, Clanton first argues, procedurally, that Ray's request for clarification was untimely under section 9 of the Arbitration Act, because it was not made within 20 days of the issuance of the award. Clanton further argues, substantively, that it is clear from the March 26 award that the arbitrator intended the defendants to be jointly and severally liable for the sum of $550,000, such that Ray would be responsible for the entire balance not paid by Raina. Therefore, he says, there was no legitimate basis for seeking clarification of the award.

¶ 27    Clanton's timeliness argument is without merit. Section 9 of the Arbitration Act provides, in relevant part:

"On application of a party to the arbitrators, or, if an application by the court is pending under Sections 11, 12, or 13, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in paragraphs (1) and (3) of subdivision (a) of section 13, or for the purpose of clarifying the award. The application shall be made within 20 days after delivery of the award to the applicant." 710 ILCS 5/9 (West 2008).

Clanton claims that, under this section, since the remand was not made within 20 days after

delivery of the award to the defendants, it was untimely. However, the 20-day limit described in this section only serves as a restriction on parties seeking clarification from the arbitrators, not as a restriction upon the court. *Federal Signal Corp. v. SLC Technologies, Inc.*, 318 Ill. App. 3d 1101, 1113 (2001). The *Federal Signal* court rejected the plaintiff's argument that the trial court lacked authority to remand an arbitration award for clarification where the defendant failed to take any action within the 20-day period allowed under section 9. *Id.* at 1112-13. The *Federal Signal* court explained: "The 20-day limit refers to the 'application of a party to the arbitrators.' (Emphasis added.) [Citation.] It is not a prohibition upon the court's authority to submit the issue to the arbitrator, where, as here, a party files an application to confirm, vacate or modify the arbitrator's award." *Id.* at 1113 (quoting 750 ILCS 5/9 (West 1998)).[1]

¶ 28    *Bankers Leasing Ass'n v. Pranno*, 288 Ill. App. 3d 255 (1997), cited by Clanton on this point, is inapposite, because it deals with a party's application for clarification. More than 20 days after the arbitrator had issued an award, the defendant sent the arbitrator two letters requesting clarification of the award. *Id.* at 261. However, the defendant never filed a motion in the trial court to modify, change, or clarify the award, nor did the trial court remand the award for clarification. *Id.* Under these circumstances, the *Bankers Leasing* court found that, pursuant to section 9 of the Arbitration Act, the arbitrator lacked jurisdiction to clarify the award. *Id.*

¶ 29    Clanton nevertheless points out that the *Bankers Leasing* court further held that the trial court could not remand the "clarified" award to the arbitrator for further clarification, since the original application for clarification was void due to its untimeliness. *Id.* at 264. However, that is readily distinguishable from the situation in the present case, since the original remand by the court in this case was made by the court, not by application of a party, and was therefore timely. On the other hand, in *Bankers Leasing*, the original application for the award was untimely, since it was made by a party and therefore subject to a statutory time limitation. Accordingly, when the court in *Bankers Leasing* remanded that clarified award for further clarification, it was a clarified award that was not valid in the first instance when it was rendered. Thus, the trial court's action in this case was permissible under section 9 of the Arbitration Act. Indeed, the *Federal Signal* decision specifically distinguishes *Bankers Leasing* upon these grounds. *Federal Signal*, 318 Ill. App. 3d at 1113.

¶ 30    Clanton nevertheless argues that, even if the remand was not untimely, it was still improper because it was clear from the March 26 award that the arbitrator intended to hold the defendants jointly and severally liable for the sum of $550,000, pursuant to which both defendants would be liable for the full amount of the award. Under such an interpretation, since Raina's liability was capped at $90,250 by the high/low agreement, which would operate extrinsically without the participation of the arbitrator, Ray would necessarily be liable for the entire remaining portion of damages. Ray, on the other hand, contends that the

---

[1]Indeed, in his brief, Clanton admits *Federal Signal* is fatal to his untimeliness argument, stating that "pursuant to the *Federal Signal* decision, *** the trial court could still remand an award to the arbitrator even though the application was made beyond the 20-day statutory period."

March 26 award was ambiguous as to whether the arbitrator intended the defendants to be jointly and severally liable, or whether he intended to limit the liability of each defendant to 50% of $550,000, that is, $275,000. Under the latter interpretation, Ray's liability would be fixed at $275,000, notwithstanding the lower cap on Raina's liability.

¶ 31    As noted, the March 26 award of the arbitrator was issued as a "Gross Award" of $550,000, and the award further stated, "See opinion as to comparative percentage for the Defendants." In the opinion, the arbitrator stated:

"1. The injuries suffered by plaintiff are indivisible.

* * *

4. Each defendant is liable at the percentage of 50%."

¶ 32    Although the arbitrator makes no express statement as to whether defendants are jointly and severally liable, Clanton argues that joint and several liability is implicit in the arbitrator's finding that his injuries were indivisible. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 423 (1997) (under the common law of joint and several liability, where two or more defendants tortiously contribute to the same indivisible injury, each defendant may be held jointly and severally liable for the entire injury, and the plaintiff may recover compensation in full from any individual defendant).

¶ 33    Ray does not directly respond to Clanton's argument with regard to the implications of the arbitrator's reference to indivisible injury, but she argues that ambiguity is introduced through the arbitrator's statement that "Each defendant is liable at the percentage of 50%." Upon its face, if taken literally, this statement would seem to imply that each defendant would be liable for only 50% of the total award, that is, $275,000, rather than being jointly and severally liable for the entire award.

¶ 34    Clanton attempts to explain the arbitrator's reference to 50% liability by arguing that it was merely intended to bring the award within the ambit of section 2-1117 of the Code of Civil Procedure, which sets forth statutory guidelines for the imposition of joint and several liability as follows:

"Except as provided in Section 2-1118, in actions on account of bodily injury or death or physical damage to property, based on negligence, *** all defendants found liable are jointly and severally liable for plaintiff's past and future medical and medically related expenses. *** Any defendant whose fault, as determined by the trier of fact, is *25% or greater of the total fault* attributable to the plaintiff, the defendants sued by the plaintiff, and any third party defendants except the plaintiff's employer, shall be jointly and severally liable for all other damages." (Emphasis added.) 735 ILCS 5/2-1117 (West 2008).

See *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 78 (2002) (stating that "[t]he clear legislative intent behind section 2-1117 is that minimally responsible defendants should not have to pay entire damage awards. The legislature set the line of minimal responsibility at less than 25%."). Thus, according to Clanton, in stating that each defendant was "liable at the percentage of 50%," the arbitrator intended that they be found jointly and severally liable for nonmedical damages pursuant to this section.

-8-

¶ 35    However, we are unpersuaded that such an interpretation is necessarily manifest from the text. If the arbitrator wanted to invoke section 2-1117, he could have done so explicitly by stating that each defendant would be jointly and severally liable for Clanton's damages under section 2-1117. There would be no need for him to employ such a roundabout reference as appears in his actual opinion. In this vein, we note that the arbitrator's statement is not framed in terms of "fault," which is the language used in section 2-1117, but rather states that "Each defendant is *liable* at the percentage of 50%" (emphasis added). By speaking of liability instead of fault, it is entirely plausible that the arbitrator intended to set forth a fixed allocation of liability for each defendant instead of making an oblique reference to the terms of section 2-1117.

¶ 36    Thus, the intent of the arbitrator as to the applicability of joint and several liability cannot be ascertained with any certainty from the text of his opinion and therefore remains ambiguous. Although, as noted, the arbitrator's reference to indivisible injury would suggest that he may have intended defendants to be jointly and severally liable, his statement that each defendant is 50% liable would, on its face, suggest the opposite. In the absence of any clarity on this issue, it would have been impossible for the trial court to determine the amount due to Clanton once the high/low limits were applied. Accordingly, it was not improper for the trial court to exercise its authority under section 9 of the Arbitration Act to remand the award for clarification on the applicability of joint and several liability.

¶ 37    In this regard, we find the case of *Harris v. Allied American Insurance Co.*, 152 Ill. App. 3d 88 (1987), to be instructive. In *Harris*, following an automobile accident, the plaintiff brought suit against the defendant insurer to compel arbitration of her claim arising out of that accident. *Id.* at 88. The parties agreed to seek arbitration on the issues of whether the plaintiff was entitled to damages and, if so, the amount that the plaintiff was entitled to recover. *Id.* at 88-89. The arbitrators issued a decision awarding $55,000 to the plaintiff but made no determination as to what portion of that award, if any, was due under the insurance policy at issue. *Id.* at 89. Thus, the *Harris* court found that the award was incomplete and lacked finality, and it affirmed the trial court's denial of the plaintiff's motion to confirm the arbitration award. *Id.* at 90.

¶ 38    Likewise, in this case, the amount of Ray's liability could not be determined from the award or from the accompanying opinion, there was no error in the trial court's decision to remand the award for clarification. Clanton claims that *Harris* is inapposite because, he states, the March 26 award in this case was complete and left no issue undecided. However, this conclusory assertion cannot stand in light of the foregoing discussion as to the ambiguity of the award.

¶ 39              B. Whether the May 6 Award Must be Vacated

¶ 40    Clanton next contends that the May 6 award must be vacated because the award contains a gross error of law on its face, insofar as it is premised upon the erroneous legal conclusion that the high/low agreement would preclude defendants from being held jointly and severally liable for Clanton's damages. He additionally contends that the award must be vacated because the arbitrator exceeded his authority by taking the high/low agreement into account

and by issuing a modification of the award rather than a mere clarification.

¶ 41     As previously discussed, the arbitration agreement entered into by the parties explicitly barred the parties from disclosing the high/low agreement to the arbitrator. The agreement also specifically provided that lack of compliance with the nondisclosure clause "shall constitute a material breach of the agreement." Nevertheless, it is apparent that, by the time the arbitrator issued the May 6 award, he had been told about the high/low agreement. Indeed, he explicitly premises the May 6 award upon the presence of that agreement, stating:

> "The doctrine of joint and several liability is not applicable due to the ADR Systems high/low limits for each defendant in the contract. The arbitrator's award is subject to the parties' agreed ADR Systems high/low limits in the arbitration agreement, which limits the amount each defendant is liable for. These amounts were not disclosed to the arbitrator prior to the March 26, 2010 arbitration decision.

> Pursuant to the agreed arbitration conditions, and the decision of March 26, 2010, I am clarifying the following amounts that are owed as follows from each defendant:

> Purnima Ray to pay $275,000 to Steven Clanton

> Dr. Mundeep Raina to pay $90,250 to Steven Clanton."

Notwithstanding the arbitrator's bland assertion that he is clarifying the amounts to be paid, the award itself is not framed as a clarification, insofar as the arbitrator does not purport to explain his original intent with respect to the applicability of joint and several liability in the March 26 award. Rather, the arbitrator states that, regardless of what his original intent might have been, his newfound awareness of the high/low agreement prevents him from finding the defendants to be jointly and severally liable.

¶ 42     Clanton contends that this reflects an incorrect understanding of the law, arguing that the presence of the high/low agreement is not incompatible with joint and several liability. In support, he cites *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429 (1992), for the proposition that, where one joint tortfeasor is partially protected from liability by a personal privilege or setoff, the other joint tortfeasor may be held responsible for the entire remaining portion of damages. The *Burke* plaintiff was involved in an altercation at Rothschild's, a liquor and beverage store, and taken into custody by police of the City of Chicago. *Id.* at 432. In plaintiff's subsequent personal injury suit against Rothschild's and the city, the trial court found Rothschild's and the city to be jointly and severally liable for plaintiff's damages. *Id.* at 432. It also found that plaintiff was contributorily negligent with respect to Rothschild's in the amount of 32%, but plaintiff was not contributorily negligent with respect to the city. *Id.* at 434. On appeal, the city contended that it, too, should benefit from the setoff available to its codefendant, such that the damages for which the city was responsible would not exceed 68% of plaintiff's total damages. *Id.* at 452. The *Burke* court rejected this proposition, instead finding that the city, as a joint tortfeasor, could be held responsible for the entire amount of the judgment. *Id.* at 453. The court explained:

> "Where one joint tortfeasor is protected against liability by a personal privilege, the liability of the other tortfeasor is not affected. [Citation.] The same principle can be applied here. If Rothschild's had been immune to liability, the City, as codefendant, would have been responsible for 100% of the award to plaintiff. That Rothschild's was

protected by the plaintiff's contributory negligence from liability for 32% of the award does not mean that the City's liability should be reduced as well." *Id.* at 453 (citing Restatement (Second) of Torts § 880 (1965) ("If two persons would otherwise be liable for a harm, one of them is not relieved from liability by the fact that the other has an absolute privilege to act or an immunity from liability to the person harmed.")).

See also *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 543 (1990) (if a plaintiff settles with one defendant, the remaining defendants may still be held jointly and severally liable for the full amount of the judgment minus the amount of the settlement). Thus, under *Burke*, where two defendants are responsible for plaintiff's indivisible injury, the fact that one defendant's liability is capped does not preclude the applicability of joint and several liability, and, in such a situation, the cap on the first defendant's liability does not affect the liability of the other defendant, from whom plaintiff may still recover his full measure of damages. It would therefore seem that the arbitrator erred in stating that the high/low agreement would render the doctrine of joint and several liability inapplicable.

¶ 43    Ray does not attempt to argue that the reasoning of *Burke* would be inapplicable to the facts of the instant case but, rather, makes the conclusory claim that any error made by the arbitrator in this regard would not be sufficient to constitute gross error. However, we need not decide whether this is sufficient to constitute gross error, because we find that, in any event, by basing the May 6 award upon the high/low agreement, the arbitrator exceeded his authority under the parties' arbitration agreement, which is grounds for vacatur under section 12(a)(3) of the Arbitration Act. 710 ILCS 5/12(a) (West 2010) ("Upon application of a party, the court shall vacate an award where: *** (3) The arbitrators exceeded their powers ***."). "[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968). Thus, for instance, in *Lee B. Stern & Co. v. Zimmerman*, 277 Ill. App. 3d 423, 427 (1995), the court held that the arbitrators exceeded their powers by including attorney fees in the arbitration award where the arbitration award did not provide for the assessment of such fees, and it vacated that portion of the award granting attorney fees. Similarly, in *Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 105 (1992), the court vacated an arbitration award of punitive damages where the parties' arbitration agreement did not expressly provide the arbitrators with the authority to award punitive damages.

¶ 44    Likewise, in the present case, the arbitrator was not authorized to know about the high/low agreement. Indeed, the parties were explicitly prohibited from disclosing that agreement to him. Thus, in basing the May 6 award upon that agreement, the arbitrator exceeded the authority granted to him by the parties.

¶ 45    Ray nevertheless contends that vacatur of the May 6 award is not required, citing *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175 (2000). In *Hawrelak*, the parties appointed three arbitrators to hear their case–one selected by the plaintiff, one selected by the defendant, and one selected by both parties as a neutral arbitrator. *Id.* at 177. After the hearing, but before an award had officially been issued, the defendant's arbitrator informed the defendant of the substance of the award. *Id.* The *Hawrelak* court held that this premature disclosure did not warrant vacatur of the award, because the record affirmatively rebutted any

claim that the premature disclosure prejudiced plaintiff in any way. *Id.* at 180. In particular, the court noted the testimony of the neutral arbitrator, apparently unrebutted, that the arbitrators had already reached their majority decision prior to the premature disclosure of their ruling, and the premature disclosure had no impact upon the final award. *Id.*

¶ 46 By contrast, in the present case, the ambiguity of the March 26 agreement that necessitated a remand for clarification in the first place makes it impossible to now determine whether the arbitrator's illicit knowledge caused any prejudice to Clanton. If, in the original March 26 award, the arbitrator intended to hold the defendants jointly and severally liable, then the change wrought in the May 6 award by his knowledge of the high/low agreement would have prejudiced Clanton by reducing his total recovery; if, on the other hand, the arbitrator originally intended to hold each defendant liable for the flat sum of $275,000, then Clanton's recovery would have remained the same. Yet we cannot tell from the text of the March 26 award which of these scenarios is true, for all the reasons discussed above, and the May 6 award provides no illumination in this regard, since it does not purport to state what the arbitrator's original intent was as of March 26 but merely bases its finding upon the presence of the high/low agreement. The facts of *Hawrelak*, from which the court was able to determine that the arbitrator's improper conduct did not prejudice the plaintiff in any way, are therefore inapposite. *Id.*

¶ 47 Accordingly, the May 6 award must be vacated under section 12(a)(3) of the Arbitration Act, since it was premised upon the arbitrator's knowledge of information that the arbitrator was not permitted to know under the parties' arbitration agreement and it is impossible to determine that Clanton was not thereby prejudiced. However, contrary to Clanton's assertion, the March 26 award cannot be reinstated, because, as noted, it is ambiguous on its face as to the applicability of joint and several liability and, therefore, to the amount of Ray's liability. Consequently, judgment cannot be entered on either award. Nor can the case be re-remanded to the same arbitrator for further clarification, since the arbitrator has been exposed to information about the high/low agreement. Thus, Clanton and Ray, who is the only defendant in this appeal, must be left in the same position in which they found themselves before the original arbitration commenced, except that they may not select the same arbitrator without explicit agreement to do so.

¶ 48 For the foregoing reasons, we reverse and remand for proceedings not inconsistent with this order.

¶ 49 Reversed and remanded.