2020 IL App (1st) 192329-U
Order filed: May 29, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-2329

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ROBERT I. BERGER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 CH 15077 |
| | ) | |
| SCHIFF HARDIN, LLP, | ) | Honorable |
| | ) | Celia G. Gamrath, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirmed the circuit court's order confirming an arbitration award in favor of Schiff Hardin, LLP, and against Robert Berger on Berger's complaint for breach of contract. We found that the award contained no gross errors of law or fact on its face, did not violate sections 5(b) and 12(a)(4) of the Uniform Arbitration Act, and was not against public policy.

¶ 2   Plaintiff, Robert I. Berger, filed a petition in the circuit court seeking to vacate an arbitration award in defendant's, Schiff Hardin, LLP's (Schiff), favor on his claims for breach of

an express or implied contract. The circuit court granted summary judgment in favor of Schiff and confirmed the award. Berger appeals. We affirm.

¶ 3    In August 2003, Berger joined Schiff as an equity partner and executed Schiff's partnership agreement. Six months later, Berger was diagnosed with esophageal cancer and had surgery. In 2005, Berger applied for long-term disability benefits with Schiff's insurance carrier, Prudential Insurance Company (Prudential). To meet the criteria to receive from Prudential the highest possible tax-free yearly disability payments of $240,000, Berger requested, and Schiff agreed, to change his status from an equity partner to an income partner with reduced hourly billing expectations and no business generation requirement. Under the Prudential policy, the maximum annual salary that Schiff could pay Berger while he was receiving his tax-free disability payments was $117,600, which represented 20% of his pre-disability income (the 20% rule). Accordingly, Schiff agreed to pay Berger $117,600 annually while he was receiving disability payments from Prudential.

¶ 4    By December 2006, Berger's health stabilized and his work productivity and business generation increased. In October 2011, Schiff increased Berger's annual compensation from $117,600 to $138,000, upon learning that Prudential allowed a cost of living adjustment. In February 2012, Schiff paid Berger $55,000 as a retroactive cost of living catch-up for the years 2006-2010.

¶ 5    When Berger turned 66 on April 8, 2015, his disability payments from Prudential ended pursuant to the policy and Schiff could again pay him any amount of compensation without regard to the 20% rule. Schiff's Executive Committee increased Berger's annual compensation from $138,000 to $450,000 effective April 8, 2015, and continuing through 2016. In 2017, Schiff's

Executive Committee paid Berger $300,000. Berger's employment with Schiff was terminated on December 14, 2017.

¶ 6     On March 23, 2018, in accordance with section 9.1 of the partnership agreement, which required that any controversy between Schiff and Berger be arbitrated, Berger filed an arbitration claim in the form of a complaint for breach of contract. Berger alleged that he entered into an oral agreement in January 2007 with Ronald Safer, Schiff's Managing Partner, and Robert Riley, Schiff's Chairman, whereby Safer and Riley agreed that when Berger's disability payments ended, Schiff would pay him the difference between the monies he was paid by Schiff pursuant to the 20% rule while on disability and the monies Schiff otherwise would have paid him had he not been on disability. Berger contended that the oral agreement was evidenced by a March 2011 email exchange, in which Berger asked Riley, "Have you and the Executive Committee had an opportunity to discuss my situation?" Riley responded, "We have. We are in agreement that you continue to bring value to the firm that is not recognized in your current firm compensation due to your unique circumstances. We will remain mindful of that fact as we move forward together."

¶ 7     Berger alleged that for the nine years he was on disability from 2006 to 2014, he generated over $9.5 million in earnings but was compensated just over $1.1 million, for an annual average of $133,000, which was "less than first-year associates at the firm." In late 2014, Berger asked to meet with Riley and Safer to discuss the compensation he would be paid following the end of his disability payments. According to Berger, Safer stated that "the Executive Committee knows it has an IOU coming due." In January 2015, Berger wrote a memo to Schiff's Executive Director, Joseph Vasquez, stating, "In November 2014 I started discussions with [Riley] and [Safer] in anticipation of the termination of my disability benefits on April 8, 2015. [Safer] acknowledged

that, "The Executive Committee knows it has an IOU coming due." No one on the Executive Committee denied Safer's statement to Berger.

¶ 8     Berger alleged that in February 2015, two months before he turned 66 and his monthly disability payments ended, Safer "was ousted" as managing partner and Riley's position as chairman was eliminated. In January 2016, Berger wrote a memo to Vasquez again stating that "the IOU has come due" and requesting the firm to "make up the short fall in compensation" during the years that he was on disability. On March 12, 2015, Riley wrote him, "I will do all that I can to see that you are treated fairly at year-end." On December 14, 2017, following a meeting and vote by Schiff's equity partners, Berger was terminated effective immediately. Berger further alleged that the Executive Committee refused to honor the oral agreement.

¶ 9     In count I of his complaint, Berger alleged that the oral agreement was an express contract, and he sought at least $2 million in damages for Schiff's breach thereof. Count II alleged the existence of a contract implied in fact, and count III alleged a contract implied in law, pursuant to which Schiff agreed to pay Berger the short-fall in compensation during the nine years he was on disability and he sought at least $2 million in damages in each count.

¶ 10    The arbitration was administered by JAMS and subject to JAMS's comprehensive arbitration rules and procedures. Rule 18 provides for summary disposition of a claim or issue.

¶ 11    Schiff filed a motion for summary disposition of Berger's entire claim. The motion was fully briefed and Berger filed a response and sur-reply. The summary disposition record included the sworn declarations of Riley and Safer. Safer declared that when Berger went on disability, the insurance policy provided that Schiff could pay him no more than 20% of his pre-disability income; any overages would have to be remitted to Prudential. Berger frequently told Safer that he was not being fairly compensated by the firm while on disability. Safer told Berger that when

his disability ended, Schiff would "treat him fairly." However, Safer was "very conscious that one Executive Committee had no authority to bind a future Executive Committee." Safer stated that he made no agreement with Berger regarding his future compensation, nor did he have the authority to do so.

¶ 12    Riley declared that the plain language of the partnership agreement vested the firm's Executive Committee with the sole power to set compensation for income partners. Riley's role as Chairman did not empower him to make any promise or commitment to Berger regarding the amount of future compensation he would receive from the firm after his disability coverage ended, and at no time did Riley make any such promise or commitment regarding Berger's future compensation and no agreement was reached on that subject. Riley stated that neither he nor anyone else at the firm had the authority to issue Berger an "IOU" concerning future compensation. No such IOU was issued to Berger.

¶ 13    Berger did not submit his own declaration or a declaration from any witness in opposition to Schiff's motion.

¶ 14    The arbitrator conducted a hearing and entered a final award granting Schiff's motion for summary disposition. With respect to count I for breach of an express oral contract, the arbitrator noted that for an oral contract to be binding, the material terms of the agreement must be definite enough to determine the intention of the parties. See *Bruzas v. Richardson*, 408 Ill. App. 3d 98, 105 (2011). The arbitrator stated:

> "Berger can prove no oral agreement at all. *** [The documents] on which Mr. Berger relies do not, individually or collectively, show that Messrs. Riley and Safer's evident sympathy for Mr. Berger amounted to a 'clearly fixed,' 'definite,' 'certain' agreement to a post-disability payment true-up, or that Messrs. Riley and Safer had

authority to act for the Executive Committee, or that there was anything close to a meeting of the minds. *** An agreement need not contain the exact amount of compensation due, *** but it must at least provide a measure for ascertaining the amount. Mr. Berger has not come close to identifying an agreement definite enough to permit the arbitrator to determine the intention of the parties, or ascertain the amount."

¶ 15 The arbitrator dismissed counts II (breach of a contract implied in fact) and count III (breach of a contract implied in law), finding that the implied contracts regarded Berger's compensation from the firm and cannot coexist with the partnership agreement, which constitutes an express contract involving the same subject. See *Maness v. Santa Fe Park Enterprises, Inc.*, 298 Ill. App. 3d 1014, 1022 (1998) ("The law is clear that an implied contract cannot coexist with an express contract on the same subject."). Berger has not challenged this portion of the arbitrator's ruling on appeal.

¶ 16 Berger filed a petition in the circuit court to vacate the arbitration award. The parties filed cross-motions for summary judgment. The court granted Schiff's motion for summary judgment, denied Berger's motion for summary judgment, and confirmed the arbitration award. Berger appeals.

¶ 17 Summary judgment is proper where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c)(West 2016); *City of Chicago v. Fraternal Order of Police, Lodge No. 7*, 399 Ill. App. 3d 707, 711 (2010). Where, as here, the parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved. *Safety-Kleen Systems, Inc. v. Department of Revenue*, 2020 IL App (1st) 191078, ¶ 21.

We review an order granting summary judgment *de novo*. *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 48.

¶ 18    Berger argues that we should reverse the circuit court's order and vacate the arbitration award and "return this dispute to arbitration for further proceedings." In support, Berger points to various alleged errors committed by the arbitrator. However, judicial review of an arbitration award is "extremely limited, more limited than appellate review of a trial court's decision." *Anderson v. Golf Mill Ford, Inc.*, 383 Ill. App. 3d 474, 479 (2008). Wherever possible, we must construe arbitration awards to uphold their validity because parties who agree to arbitration have chosen the means to resolve their dispute, and judicial modification of that decision would deprive the parties of that choice. *Sloan Electric v. Professional Realty and Development Corp.*, 353 Ill. App. 3d 614, 620 (2004).

¶ 19    The arbitration system is "essentially structured without due process, rules of procedure, rules of evidence, or any appellate procedure." *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 181 (2000). As such, a court has no power to determine the merits of the award because it strongly disagrees with the arbitrator's determination and cannot overturn an award because it is illogical or inconsistent. *Sloan Electric*, 353 Ill. App. 3d at 620. Errors in judgment or mistakes of law or fact are not grounds for vacating an arbitration award. *Clanton v. Ray*, 2011 IL App (1st) 101894, ¶ 24. A gross error of law or fact appearing on the face of the award may require the vacation of the award, though. *Id.* "A gross error of law exists only where it appears from the face of the award that the arbitrator was so mistaken as to the law that, if the arbitrator had been informed of the mistake, the award would have been different." *Id.*

¶ 20    No gross error of law appears on the face of the arbitration award as to the breach of oral contract claim, as the arbitrator correctly cited case law holding that for an oral contract to be

binding, the material terms of the agreement must be definite enough to determine the parties' intent. See *Bruzas*, 408 Ill. App. 3d at 105. No gross error of fact appears on the face of the arbitration award, either. The arbitrator examined the evidence before him, including documents presented by Berger indicating that Riley and Safer were sympathetic to him due to his relatively low compensation during his disability, and found that they did not show a definite oral agreement for a "post disability payment true-up." The arbitrator further found that the evidence did not show the amount of any such agreed upon post-disability payments, or that Riley and Safer even had the authority to make such an agreement for post-disability payments on behalf of the Executive Committee. The arbitrator's factual findings were not erroneous on their face, let alone grossly erroneous. In the absence of a gross error of law or fact apparent from the face of the award, the circuit court did not err in confirming the award and granting summary judgment in favor of Schiff.

¶ 21    Berger next argues that we should reverse the circuit court's summary judgment order in favor of Schiff, and vacate the arbitration award, because the arbitrator violated section 5(b) and section 12(a)(4) of the Uniform Arbitration Act when it denied his motion to compel discovery.

¶ 22    Section 5(b) states:

"The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing." 710 ILCS 5/5(b)(West 2016).

¶ 23    Section 12(a)(4) states:

"Upon application of a party, the court shall vacate an award where *** [t]he arbitrators *** refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of Section 5, as to prejudice substantially the rights of a party." *Id.* § 12(a)(4).

¶ 24    Berger argues that the arbitrator violated section 5(b) and section 12(a)(4) by refusing to compel Schiff to identify the three equity partners who voted against his removal from the firm and by refusing to compel Schiff to produce three categories of documents related to the performance of and compensation paid to other income partners. The circuit court rejected this same argument and we affirm, as Berger has failed to show that any of this evidence was material to the controversy here, *i.e.*, whether Berger entered into an oral agreement with Riley and Safer on behalf of the Executive Committee for post-disability payments.

¶ 25    Berger also argues that the arbitrator violated section 5(b) and section 12(a)(4) by refusing to compel Schiff to produce certain documents that it contended were privileged. The circuit court rejected this argument because Berger did not seek to compel their production at arbitration and never asked for an *in camera* review and otherwise failed to raise this issue before the arbitrator. We affirm. See *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 49 (2009) (a party forfeits judicial review by failing to raise it to the arbitrator).

¶ 26    Finally, Berger argues that we should reverse the summary judgment order in favor of Schiff and vacate the arbitration award because the award violates public policy by failing to give him leave to amend. An arbitration award may be vacated when it violates public policy. *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 344 Ill. App. 3d 977, 993 (2003). The public policy analysis involves two steps. First, we must identify a well-defined and dominant public policy that is ascertainable from the laws and legal precedents and then we determine whether the arbitrator's award violated that policy. *Id.* Berger has identified no well-defined and dominant public policy permitting amended claims in an arbitration setting where the "rights and procedures common to civil trials *** are often severely limited or unavailable." *Id.* at 985. Moreover, even if such a well-

defined and dominant public policy permitting amended claims in an arbitration setting existed, Berger never sought leave to amend and thus no violation of the public policy occurred here.

¶ 27    For all the foregoing reasons, we affirm the circuit court's order granting summary judgment in favor of Schiff, denying Berger's cross-motion for summary judgment, and confirming the arbitration award.

¶ 28    Affirmed.