7 September 2000

NO. 4-00-0031

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

RONALD M. HAWRELAK,

Plaintiff-Appellee,

v.

MARINE BANK, SPRINGFIELD,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Sangamon County

No. 99MR50

Honorable

Stuart H. Shiffman,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1995, plaintiff, Ronald M. Hawrelak, and defendant, Marine Bank, Springfield (the Bank), entered into an employment agreement (Agreement).  Hawrelak eventually left the Bank's employment, and in June 1997, he sought arbitration on several compensation issues.  In January 1999, following a hearing, the arbitrators awarded $64,893 to Hawrelak, who later filed a motion to vacate the award.  In December 1999, the trial court granted Hawrelak's motion and vacated the arbitration award.  The Bank appeals, and we reverse and remand.

I. BACKGROUND

Pursuant to the Agreement, Hawrelak served as president of the Bank's mortgage banking division from June 1995 until April 1997, when he resigned that position.  The Agreement contained all of the terms of Hawrelak's compensation, including how the Bank would compensate him upon the termination of his employment.  The Agreement also provided for arbitration in the event a dispute arose thereunder.

 Following Hawrelak's resignation, he submitted for arbitration several compensation issues, including whether he was entitled to damages or compensation on a 
quantum
 
meruit
 theory or whether there existed an enforceable contract under which the amounts payable to him were set forth.  Pursuant to the terms of the Agreement, the Bank selected an arbitrator (Craig Lewis), Hawrelak selected an arbitrator (Roger Rutherford), and Lewis and Rutherford then selected a third, neutral arbitrator (retired circuit judge Richard Mann).  In November 1998, the arbitrators conducted an eight-day hearing on the compensation issues.  On November 30, 1998, the arbitrators met and reached a majority decision on all issues raised by Hawrelak in the arbitration.  The next day, Mann drafted a letter, which enclosed the majority decision, and sent copies to Lewis and Rutherford.

Around December 2 or 3, 1998, Lewis spoke by telephone with the Bank's chief executive officer and informed him that Lewis and Mann had signed the majority decision.  Lewis then sent a copy of the decision to the Bank, and someone at the Bank forwarded a copy to the Bank's attorney.  The Bank's attorney, who was unaware that Hawrelak had not yet received the decision, then telephoned Hawrelak's counsel to inquire about payment of the award.  Later during December 1998, Rutherford provided Hawrelak with a copy of the majority decision as well as memo

randa prepared by Lewis and Rutherford during the deliberation process.

In January 1999, the American Arbitration Association (Association) issued the final award, which fully incorporated the November 1998 majority decision.  In addition, the final award specified how the arbitration costs and fees would be divided between the parties.  

In February 1999, Hawrelak filed a motion in the trial court, seeking to vacate the arbitration award on the grounds that (1) the award was procured by "undue means" under section 12(a)(1) of the Uniform Arbitration Act (Act) (710 ILCS 5/12(a)(1) (West 1998)) because (a) Lewis prematurely disclosed the arbitration decision to the Bank, and (b) during the arbitra

tion panel's deliberations, Lewis submitted a memorandum contain

ing arguments and data that had not been presented during the hearing; (2) the arbitrators exceeded their powers under section 12(a)(3) of the Act by not adhering to the language of the Agreement in awarding damages; and (3) the arbitrators violated section 12(a)(4) of the Act by refusing to postpone the hearing or exclude nontestifying witnesses.  In response, the Bank filed a motion to confirm the award, pursuant to section 11 of the Act (710 ILCS 5/11 (West 1998)).

In May 1999, the trial court granted Hawrelak's request "to conduct limited discovery concerning the premature release of the decision and the contacts that may have occurred between the arbitrators and the parties."  Hawrelak subsequently deposed Lewis and Mann, and the Bank deposed Rutherford.  All three arbitrators were deposed regarding the premature disclosure of the decision, 
ex
 
parte
 communications between the arbitrators and the parties, and the arbitral deliberation process.  Following the depositions and further briefing by the parties, the court entered an order vacating the arbitration award in its entirety, remanding for a new arbitration hearing, and denying the Bank's motion to confirm the award.  The court specifically found that Lewis' premature disclosure of the decision "prejudiced the rights of Mr. Hawrelak" and justified vacating the award.  

This appeal followed.

II. JUDICIAL REVIEW OF ARBITRATION AWARDS

The scope of judicial review of an arbitration award is nothing like the scope of an appellate court's review of a trial court's decision (see 
American Federation of State, County & Municipal Employees v. Department of Central Management Services
, 173 Ill. 2d 299, 304, 671 N.E.2d 668, 672 (1996)) because the Act provides for very limited judicial review of an arbitrator's award.  710 ILCS 5/12, 13 (West 1998).  In particular, the Act allows vacation of an award (1) procured by corruption, fraud, or other undue means, (2) where there was evident partiality or misconduct on the part of the arbitrators, (3) where the arbitra

tors exceeded their powers, or (4) where the arbitrators refused to postpone a hearing upon sufficient cause or to hear material evidence, so as to prejudice the rights of a party.  See 710 ILCS 5/12(a)(1), (a)(2), (a)(3), (a)(4) (West 1998).  If the arbitra

tors have acted in good faith, however, the award is conclusive upon the parties.  
Garver v. Ferguson
, 76 Ill. 2d 1, 7-8, 389 N.E.2d 1181, 1183 (1979).  

A presumption exists that the arbitrators did not exceed their authority.  Moreover, arbitration awards should be construed, whenever possible, so as to uphold their validity.  
Rauh v. Rockford Products Corp.
, 143 Ill. 2d 377, 386, 574 N.E.2d 636, 641 (1991).  Such deference is accorded because the parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of that choice.  
Tim Huey Corp. v. Global Boiler & Mechanical, Inc.
, 272 Ill. App. 3d 100, 106, 649 N.E.2d 1358, 1362 (1995).  "'A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.'"  
Garver
, 76 Ill. 2d at 9, 389 N.E.2d at 1184, quoting 
Burchell v. Marsh
, 58 U.S. (17 How.) 344, 349, 15 L. Ed. 96, 99 (1854). 

Because the parties to an arbitration did not bargain for a judicial determination, a reviewing court cannot set aside an arbitration award because of errors in judgment or mistakes of law or fact. 
 
Gross
 errors of judgment in law or 
gross
 mistakes of fact may be reviewable, but only if they are apparent upon the face of the award.  
Garver
, 76 Ill. 2d at 7, 389 N.E.2d at 1183.  A party seeking to vacate an arbitration award must provide clear, strong, and convincing evidence that the award was im

proper.  
Canteen Corp. v. Former Foods, Inc.
, 238 Ill. App. 3d 167, 179-80, 606 N.E.2d 174, 182 (1992).  

III. ANALYSIS  

A. The Premature Disclosure of the Arbitration Decision

The Bank argues that the trial court erred by vacating the arbitration award because Lewis' premature disclosure of the majority decision had no effect on the final award issued by the Association.  We agree.

Because the pertinent facts are undisputed and only the trial court's legal conclusions are at issue, we review the court's ruling 
de
 
novo
.  See 
In re D.G.
, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991) ("where neither the facts nor [the] credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider 
de
 
novo
").

Section 12 of the Act provides, in pertinent part, that an arbitration award can be vacated where the award "was procured by corruption, fraud[,] or other undue means."  710 ILCS 5/12(a)(1) (West 1998).  "Undue means" has been interpreted as akin to fraud and corruption.  
Hahn v. A.G. Becker Paribas, Inc.
, 164 Ill. App. 3d 660, 667, 518 N.E.2d 218, 222 (1987).  In 
Seither & Cherry Co. v. Illinois Bank Building Corp.
, 95 Ill. App. 3d 191, 196-97, 419 N.E.2d 940, 945 (1981), this court described an award procured by "undue means" as one in which "some aspect of the arbitrator's decision or decision-making process *** was obtained in some manner which was unfair and beyond the normal process contemplated by the [Act]."

In the present case, Hawrelak has failed to provide any evidence showing that the final arbitration award was procured by "undue means" based on Lewis' premature disclosure of the major

ity decision.  Instead, the record belies any claim that the award was obtained in an unfair manner outside the normal process contemplated by the Act.  The undisputed evidence shows that the January 1999 final award, which was issued by the Association, was--in all material respects--the same as the November 1998 majority decision.  The final award fully incorporated the majority decision, which was attached to Mann's December 1, 1998, letter.  The only modification in the final award consisted of language specifying how the arbitration fees and expenses would be divided between the parties, and we agree with the Bank that no real dispute existed regarding the allocation of those costs.  In addition, the deposition testimony of the neutral arbitrator, Mann, clearly established that the November 1998 majority deci

sion was a final decision and Lewis' premature disclosure of that decision had no impact upon the January 1999 final award.  We therefore conclude that the trial court erred by finding that Lewis' premature disclosure of the majority decision required vacatur of the arbitration award.

B. Hawrelak's Other Claims of Error

Hawrelak urges this court to affirm the trial court's vacatur of the arbitration award because of other alleged errors by the arbitrators.  Specifically, he contends that the award was improper because (1) it was procured by undue means when, during the arbitration panel's deliberations, Lewis submitted a memoran

dum containing arguments and data that had not been presented during the hearing; (2) the arbitrators exceeded their powers under section 12(a)(3) of the Act by not adhering to the Agree

ment's specific language in awarding damages; and (3) the arbi

trators violated section 12(a)(4) of the Act by (a) refusing to postpone the hearing to allow him to depose one of the Bank's expert witnesses and (b) refusing to exclude nontestifying witnesses from the hearing room.

Hawrelak's arguments regarding the arbitrators' conduct are akin to arguments that parties typically raise regarding a trial court's procedures and ruling.  However, Hawrelak did not opt to submit to the judgment of the courts, and we will not inject ourselves into a case where the parties have exercised their right to submit their disputes to arbitration--warts and all.  The parties bargained for the arbitration panel's view of the facts and interpretation of the Agreement, and they got it.  

Once parties bargain to submit their disputes to the arbitration system (a system essentially structured without due process, rules of procedure, rules of evidence, or any appellate procedure), we are disinclined to save them from themselves.  For instance, Hawrelak's claim that the arbitrators erred by refusing to exclude nontestifying witnesses from the hearing room is wholly without merit.  While this might be a serious issue in trial court proceedings, it is not an issue in arbitration proceedings.  Absent 
any
 evidence that this award was made in bad faith, that any of the arbitrators were guilty of fraud or corruption, or that the arbitrators deliberately chose not to follow the law, the trial court's vacatur of the arbitration award cannot stand.

In so concluding, we reaffirm what we wrote in 
Tim Huey
, 272 Ill. App. 3d 100, 649 N.E.2d 1358, in which we affirmed the trial court's confirmation of an arbitration award: 

"We see no principled way to inject ourselves into this case, to correct an award of damages we suspect is insufficient, where the parties have exercised their right to select an alternate forum.  That is not to say that we are satisfied with the arbitra

tors' award in this case.  If a jury had made this award, we might well reverse it.  ***  We should not concoct some reason to review arbitration awards we do not like, however, at the same time stating that we will not set aside an award because of errors in judgment or mistakes of law or fact."  
Tim Huey
, 272 Ill. App. 3d. at 108-09, 649 N.E.2d at 1364.

Tim Huey
 continues:

"'[W]here arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles.  Parties should be aware that they get what they bargain for and that arbitration is far different from adjudica

tion.'"  
Tim Huey
, 272 Ill. App. 3d at 111, 649 N.E.2d at 1366, quoting 
Stroh Container Co. v. Delph Industries, Inc.
, 783 F.2d 743, 751 n.12 (8th Cir. 1986). 

We also take this opportunity to remind trial courts that they should be hesitant to allow discovery of arbitral processes.  The trial court here allowed the parties to conduct limited discovery concerning the premature disclosure of the majority decision and 
ex
 
parte
 contacts that may have occurred between the arbitrators and the parties.  However, the record is replete with instances where the parties delved into the arbitra

tors' deliberation process, in total disregard of the court's order.  It is precisely because of this sort of abuse that courts should hesitate to allow any discovery of arbitral processes.

IV. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

COOK, P.J., and MYERSCOUGH, J., concur.