# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Decatur Police Benevolent & Protective Ass'n Labor Committee v. City of Decatur,**
**2012 IL App (4th) 110764**

---

| | |
|---|---|
| Appellate Court Caption | DECATUR POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION LABOR COMMITTEE, Plaintiff-Appellant, v. THE CITY OF DECATUR, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0764 |
| Argued | March 20, 2012 |
| Filed | April 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's vacation of an arbitration award finding no just cause to discharge a police officer based on allegations of domestic battery and untruthfulness and determining that the officer should be reinstated upon serving a 45-day suspension was affirmed, notwithstanding the arguments of the officer's union that the trial court ignored relevant, predominant statutory law and that in the absence of a finding that the officer committed domestic violence, public policy considerations would be furthered by the arbitrator's decision, since statutory law was not ignored, the trial court was fully aware of the public policy favoring the enforcement of collective-bargaining agreements, and there was no error in the trial court's interpretation of language used in the award. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 11-MR-63; the Hon. Robert C. Bollinger, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Shane M. Voles (argued) and Daniel Dykstra, both of Police Benevolent Labor Committee, of Springfield, for appellant.

John T. Robinson (argued), Assistant Corporation Counsel, of Decatur, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Steigmann and Cook concurred in the judgment and opinion.

## OPINION

¶ 1    In July 2010, plaintiff, Decatur Police Benevolent and Protective Association Labor Committee (the Union), filed a grievance on behalf of its member, police officer Jeremy Welker, contesting his discharge from the police department after allegations of domestic battery and untruthfulness. Pursuant to a collective-bargaining agreement under the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/1 to 27 (West 2008)), the Union and defendant, the City of Decatur (the City), agreed to resolve the issue of whether just cause existed to discharge Officer Welker. After a hearing, the arbitrator, in a 99-page decision, found no just cause and determined Officer Welker should be reinstated upon serving a 45-day suspension. *City of Decatur v. Policeman's Benevolent & Protective Ass'n Labor Committee*, FMCS No. 10-55173-A (2011) (Donegan, Arb.).

¶ 2    The Union applied to the circuit court to confirm the arbitration award and the City sought a declaration the award was void as against public policy. In a 14-page judgment, the court agreed the arbitration award violated public policy and vacated the arbitrator's award. The Union appeals, arguing (1) the court ignored relevant, predominant statutory law; and (2) because the arbitrator did not find Officer Welker committed domestic violence, public-policy considerations are furthered by the arbitrator's decision. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    At arbitration, both sides presented extensive evidence. In summary, the Union presented evidence showing Officer Welker had worked in the juvenile investigations division at the Decatur police department since July 1994. Officer Welker received awards and commendations for his police work. For example, in July 1995, Officer Welker received the "key drug award" because of his work that resulted in the arrests of drug dealers. He received two more key drug awards in 1998. In addition, the City's police department, between 1997 and 2005, commended Officer Welker for his work preventing a possible suicide, arresting felons, helping diffuse a hostage situation, and helping solve a sexual assault and robbery.

¶ 5    The City produced, among other items of evidence, a written statement by Officer Welker's wife Michelle. According to Michelle's statement, on January 17, 2010, Michelle and Officer Welker argued in their kitchen. Michelle, not wanting to argue, went to the

bedroom. In the bedroom, Officer Welker pushed her onto the bed. After Michelle stood, Officer Welker "got in her face." Michelle, afraid Officer Welker would attack her, attempted to push him away. After she did so, Officer Welker "head-butted" her in the face above her nose.

¶ 6 The City also submitted into evidence a report by Sergeant Steven Carroll, who investigated the incident. According to that report, when Sergeant Carroll arrived at the scene that night, he asked Officer Welker what occurred. Officer Welker stated he and Michelle had argued and she left the house. Officer Welker stated there had been an argument but no battery or physical contact. Sergeant Carroll then interviewed Michelle and returned to their residence to arrest Officer Welker.

¶ 7 The City further produced evidence showing in the early morning hours following the event, Officer Welker went to the police headquarters, where he was interviewed by Sergeant Carroll. Officer Welker admitted the physical altercation, but stated if Michelle had an injury it was from her striking him. Officer Welker stated Michelle hit him in the forehead with her face and nose.

¶ 8 The arbitrator also considered evidence Officer Welker previously had been disciplined for domestic battery involving Michelle. In September 2009, Michelle notified the police of the incident. The police department disciplined Officer Welker for this conduct by instituting a 30-day suspension and ordering him to participate in an employee-assistance program.

¶ 9 Upon considering the evidence from both sides, the arbitrator concluded Officer Welker's termination for the criminal offense of domestic battery and untruthfully responding to direct questions about the incident was not for just cause. While the arbitrator on at least three occasions stated the City proved by a preponderance of the evidence the domestic-violence incident occurred, he found the City had not proved domestic violence by clear and convincing evidence:

> "Like in most arbitrations, there was considerable conflicting evidence in the instant case. The preponderance of the credible, pertinent evidence was presented by the Agency.
>
> * * *
>
> Fifth, the Arbitrator finds that the Agency has proven by a preponderance of the evidence that the charged conduct occurred. However, the Arbitrator requires that an Employer must prove domestic battery and untruthfully responding to direct questions regarding the incident by clear and convincing evidence in order to justify termination of an employee. The standard of proof was not met in the instant case. ***
>
> Sixth, the Arbitrator finds that the Agency proved the charges of domestic battery and lack of truthfulness in answering direct questions concerning the incident by [Officer Welker] by a preponderance of the evidence. It did not prove the charges by clear and convincing evidence which would be required to terminate the Grievant. The Grievant denied the charges. However, the [City's] witnesses were somewhat more credible."

¶ 10 While the arbitrator found a nexus existed between Officer Welker's conduct and the reputation and efficiency of the service and determined Officer Welker's misconduct was "somewhat detrimental," the arbitrator determined Officer Welker's "conduct can be corrected with progressive discipline instead of termination." The arbitrator noted Officer

Welker's conduct did not occur in a public place, meaning the alleged conduct would have a limited effect on the department's reputation as the alleged incident occurred in the privacy of Officer Welker's home. The arbitrator concluded Officer Welker "did not bring discredit or embarrassment on himself or the police department."

¶ 11 The arbitrator further concluded the department did not apply progressive discipline and the termination of Officer Welker was unfair and unreasonable. The arbitrator found "[a] lesser penalty should bring about corrective behavior on the part of the Grievant. Discipline should be corrective not punitive." Applying the "Douglas factors" (*Douglas v. Veterans Administration*, 5 M.S.P.B. 313, 331-32 (1981)), the arbitrator noted Officer Welker "had a very good record with infrequent discipline" and over 14 years of "good to excellent service." The arbitrator determined the proper penalty was a 45-day suspension. The arbitrator further observed "the Agency has presented no judicial finding or order that the Grievant has committed the crime of domestic battery."

¶ 12 The arbitrator determined Officer Welker had been disciplined more severely for untruthfulness than other incidents committed by the City's police officers. One officer was suspended for 30 days for filing a false police report. Another officer was suspended 15 days for untruthfulness in departmental matters and two other violations.

¶ 13 The arbitrator determined Officer Welker, in arbitration, retained a presumption of innocence and was entitled to the benefit of substantial doubt. The arbitrator concluded "there are definitely substantial doubts in the [a]rbitrator's mind that a domestic battery occurred." "There may have been some physical contact but no clear and convincing evidence that there was a battery." The arbitrator apparently believed there was some requirement the domestic battery be proved by clear and convincing evidence.

¶ 14 The arbitrator also found Officer Welker admitted making untruthful statements to the department but determined those provided an insufficient basis for the termination of his employment. The arbitrator determined a 45-day suspension was sufficient punishment for Officer Welker's admitted untruthfulness.

¶ 15 In August 2011, the trial court entered an order setting aside the arbitrator's award and denying the Union's application to confirm it. The court noted the arbitrator concluded there was just cause to discipline Officer Welker for committing a domestic battery and being untruthful in responding to questions regarding the incident. Thus, the arbitrator determined "the level of proof required to establish just cause to *discipline* [O]fficer Welker for the charged violations of departmental policy was by a preponderance of the evidence." (Emphasis added.)

¶ 16 The trial court concluded "there is without question a well-defined and dominant public policy in numerous laws of the State of Illinois against acts of domestic violence," including laws clarifying the responsibilities of law-enforcement officers to investigate incidents of domestic violence and protect victims of domestic violence. The court also noted the strong public policy for law-enforcement officers to be truthful during police investigations. The court concluded the following:

> "The arbitrator's award does not in any way promote the welfare and protection of victims of domestic violence. It sends a message that police departments must continue

to employ an officer found to be abusive and untruthful, even after employing progressive discipline in an effort to correct this behavior. It undermines the public confidence in police departments by requiring the continued employment of officers who fail to tell the truth during investigations surrounding their own conduct, yet expecting that others facing such investigation will be truthful."

¶ 17 The Union's appeal followed.

¶ 18                             II. ANALYSIS

¶ 19                    A. Judicial Review of Arbitration Awards

¶ 20 The Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/1 to 23 (West 2010)) "provides for very limited judicial review of an arbitrator's award." *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 178, 735 N.E.2d 1066, 1068-69 (2000). An arbitrator's award may be vacated only (1) if the award was procured by fraud, corruption, or other undue means, (2) when partiality or misconduct by the arbitrator is evident, (3) when the arbitrator exceeded his or her powers, or (4) when the arbitrator improperly refused to postpone a hearing or hear material evidence to a party's prejudice. *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069.

¶ 21 On judicial review, there is a presumption the arbitrator did not exceed his or her authority. *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069. We are to construe the award, when possible, to uphold its validity. *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069. "Such deference is accorded because the parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of that choice." *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069. We may not set aside an arbitration award because of judgment errors or mistakes of law or fact. *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069.

¶ 22 However, "[c]ourts have crafted a public[-]policy exception to vacate arbitral awards which otherwise derive their essence from a collective-bargaining agreement." *American Federation of State, County & Municipal Employees* (*AFSCME*), 173 Ill. 2d 299, 306, 671 N.E.2d 668, 673 (1996). According to this exception, this court should not enforce a collective-bargaining agreement when its enforcement "is repugnant to established norms of public policy." *AFSCME*, 173 Ill. 2d at 307, 671 N.E.2d at 673.

¶ 23 The public-policy exception is a narrow one–one that is to be invoked only when a party clearly shows enforcement of the contract, as interpreted by the arbitrator, contravenes some explicit public policy. *AFSCME*, 173 Ill. 2d at 307, 671 N.E.2d at 673. The public policy must be well defined and dominant and determined " 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). To ascertain public policy, this court looks first to our constitution and statutes and, when those are silent, to judicial decisions. *Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)*, 197 Ill. App. 3d 503, 512, 554 N.E.2d 759, 765 (1990).

¶ 24   A two-step analysis is to be employed when considering whether the public-policy exception applies. The first question "is whether a well-defined and dominant public policy can be identified." *AFSCME*, 173 Ill. 2d at 307, 671 N.E.2d at 674. If one can, then the second question is whether the award of the arbitrator, resulting from his or her interpretation of the agreement, violates public policy. *AFSCME*, 173 Ill. 2d at 307-08, 671 N.E.2d at 674.

¶ 25   B. The Trial Court Did Not Ignore or Violate Predominant Statutory Law

¶ 26   The Union first argues the trial court erroneously ignored section 15 of the Labor Act (5 ILCS 315/15(a) (West 2008)) and violated section 2-103 of the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/2-103 (West 2010)). The Union contends had the court considered section 15 of the Labor Act, it would have known that law takes precedence over other laws. Regarding the Human Rights Act, the Union contends the court violated Officer Welker's rights when it considered the domestic-violence arrest when Officer Welker was not convicted.

¶ 27   1. *Section 15 of the Labor Act*

¶ 28   Section 15(a) of the Labor Act provides, in relevant part, the following:

"In case of any conflict between the provisions of this Act and any other law (other than Section 5 of the State Employees Group Insurance Act of 1971), executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." 5 ILCS 315/15(a) (West 2008).

¶ 29   The Union relies on section 15 as establishing "[t]he domestic[-]violence laws and the public policies in favor of 'effective law enforcement' have no place in this matter unless they relate to the conditions of employment for Officer Welker." The Union maintains if the criminal law relates to Officer Welker's conditions of employment, the criminal laws are statutorily inferior to the Labor Act. The Union further maintains the court did not consider other officers had not been discharged for being untruthful and, without citation to a particular subsection or case in support, an employer may not terminate an employee for committing an offense the employer determined was not a terminable offense.

¶ 30   The Union's argument is unconvincing. We disagree the trial court erred by not citing section 15 and/or by ignoring the public policy behind it. The court did not need to specifically discuss section 15. The Union's interpretation of section 15 is too broad. The wording of section 15 is that when the Labor Act is in conflict with a specific statute or rule regarding conditions of employment, the Labor Act's provisions control. See 5 ILCS 315/15(a) (West 2008). Section 15 does not say the Labor Act controls when in conflict with the public policy of the state. If applied as the Union argues, section 15 would swallow the public-policy exception, because, no matter how offensive to public policy an arbitrator's decision is, the arbitrator's decision would stand. We will not read it so broadly, particularly when the public-policy exception has been considered and applied by Illinois courts since the Labor Act's inception. See, *e.g.*, *Chicago Transit Authority v. Amalgamated Transit Union*, 399 Ill. App. 3d 689, 697-98, 926 N.E.2d 919, 926-27 (2010).

¶ 31     Second, it is clear the trial court was aware of the public policy underlying section 15 and the Labor Act. The public policy in favor of collective-bargaining agreements and the rights of employees thereunder is reflected in the law that grants "very limited judicial review of an arbitrator's award." *Hawrelak*, 316 Ill. App. 3d at 178, 735 N.E.2d at 1068-69. We presume the arbitrator did not exceed his or her authority and we construe the award, when possible, so as to affirm its validity, "because the parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of that choice." *Hawrelak*, 316 Ill. App. 3d at 179, 735 N.E.2d at 1069. Illinois courts caution against applying the public-policy exception. It is a very narrow exception (*AFSCME*, 173 Ill. 2d at 307, 671 N.E.2d at 673) to be applied only when a well-defined and dominant public policy may be ascertained (*W.R. Grace & Co.*, 461 U.S. at 766 (quoting *Muschany*, 324 U.S. at 66)). The court, in rendering its decision, properly cited these principles and rules and was fully aware of Illinois public policy favoring the enforcement of collective-bargaining agreements and arbitrator awards.

¶ 32     In making its argument regarding section 15, the Union further contends the City could not terminate Officer Welker for untruthfulness because it had not terminated others for untruthfulness before. The Union maintains such an act is an unfair practice. This argument is misleading. The issue is not simply whether the City had just cause to terminate Officer Welker for untruthfulness, but whether the City had just cause due to a domestic-violence incident shortly following a previous suspension for a separate domestic-violence incident in addition to untruthfulness. The Union's argument here is not on point, and we will not consider it further.

¶ 33                                    2. *Human Rights Act*

¶ 34     The Union contends the trial court violated section 2-103 of the Human Rights Act (775 ILCS 5/2-103 (West 2010)). Section 2-103(A) states an entity commits a civil-rights violation when it uses "the fact of an arrest *** as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, *** discharge, [or] discipline." 775 ILCS 5/2-103(A) (West 2010).

¶ 35     We find no error. While section 2-103(A) prohibits using "the fact of an arrest" as the basis for discharge (775 ILCS 5/2-103(A) (West 2010)), it does not prohibit mentioning the arrest when summarizing the evidence, which is what occurred here. In its opinion, the court simply stated an arrest was made: "Officer Welker was suspended for 30 days for committing an act of domestic violence involving his then wife, Michelle Welker. Shortly thereafter, Officer Welker was *arrested* concerning a further alleged incident of domestic violence involving Michelle Welker." (Emphasis added.) The court then noted the alleged facts behind the arrest, as well as the arbitrator's decision finding, by a preponderance of the evidence, this event occurred. The court's approach is not inconsistent with the Human Rights Act, which allows the entity to investigate whether the person committed the conduct that led to the arrest: "The prohibition against the use of the fact of an arrest contained in this Section shall not be construed to prohibit an employer, employment agency, or labor organization from obtaining or using other information which indicates that a person actually

-7-

engaged in the conduct for which he or she was arrested." 775 ILCS 5/2-103(B) (West 2010).

¶ 36                    C. The Trial Court Did Not Rewrite the Arbitrator's Decision

¶ 37    The Union next maintains the arbitrator's award is not repugnant to public policy, because the City failed to prove its allegations of domestic violence, leaving only the finding Officer Welker was untruthful. The Union contends the trial court ignored the multiple findings by the arbitrator showing the act was not proved, but seized on language in the arbitrator's decision to overturn that decision as violating public policy. The Union maintains "[t]he court's exercise in linguistics reveals its mission to replace the arbitrator's findings with its own" and violates the requirement to construe the award as valid when possible.

¶ 38    In support of its argument, the Union provides the following excerpts from the arbitrator's decision as showing the arbitrator found the domestic-violence act was not proved:

    (1) "[T]he Arbitrator finds that [the City] has presented no judicial finding or order that the Grievant has committed the crime of domestic battery";

    (2) "In the instant case[,] there are definitely substantial doubts in the Arbitrator's mind that a domestic battery occurred. There may have been some physical contact but no clear and convincing evidence that there was a battery";

    (3) "As indicated previously the video testimony of Michelle Welker *** left substantial doubts in the Arbitrator's mind that a domestic battery had occurred. *** In fact[,] the video testimony of Michelle Welker *** was not persuasive"; and

    (4) "[T]he Arbitrator finds that [the City] failed to prove the Grievant committed a domestic battery. *** All lawyers should know that a battery requires intent to strike or hit. The evidence does not show that the Grievant intended to hit his wife. It is also very significant that his wife's appearance was normal within hours. The Arbitrator does not find that the Grievant head-butted his ex-wife. A person trained in mixed martial arts would cause great damage with a head-butt."

¶ 39    These statements cannot be considered in a vacuum, nor did the court conduct an exercise in linguistics. There are at least three instances where the arbitrator explicitly found the City *proved* its allegations by a preponderance of the evidence. Just five paragraphs into the arbitrator's discussion, the arbitrator wrote the following: "Like in most arbitrations, there was considerable conflicting evidence in the instant case. The preponderance of the credible, pertinent evidence was presented by [the City]." As its fifth point, the arbitrator concluded the City "has proven by a preponderance of the evidence that the charged conduct occurred." The arbitrator, at the end of that paragraph wrote the City's evidence, however, "is not sufficient to meet the clear and convincing standard necessary to terminate an employee for domestic battery." In the following paragraph, as its sixth point, the arbitrator wrote it "finds that [the City] proved the charges of domestic battery and lack of truthfulness in answering direct questions concerning the incident by the Grievant by a preponderance of the evidence."

¶ 40    While this court must construe an award as valid, it must only do so if that is possible. See *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246,

254, 529 N.E.2d 534, 537 (1988). In this case, the arbitrator did find the allegations of domestic violence proved by a preponderance of the evidence. The first three holdings on the matter explicitly so state. The other statements occurring in the arbitrator's analysis must be read consistent with how the arbitrator analyzed the evidence, requiring proof "by clear and convincing evidence." We find no error in the trial court's interpretation of the arbitrator's language. In closing, we find the trial court's 14-page single-spaced judgment to be most helpful.

¶ 41                    D. New Arguments Raised in Reply Brief Are Forfeited

¶ 42    In its opening brief, the Union raised only the above challenges to the trial court's decision. In its reply brief, the Union raised additional arguments, such as arguing the arbitrator's award requiring the criminal allegations be proved by more than a preponderance of the evidence was consistent with public policy and the arbitrator merely followed the City's lead by suspending Officer Welker for alleged domestic violence, as the City had done before.

¶ 43    Illinois Supreme Court Rule 341(h)(7) (eff. July 1, 2008) requires an appellant to include in his opening brief all of its arguments regarding trial court error. New arguments "shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). The Union forfeited these arguments. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 44    We elect to consider these arguments briefly. We are aware of no case, and no statute, that requires an allegation of misconduct in this context be proved by clear and convincing evidence because the misconduct may also be criminal and because the City seeks to discharge the officer. We agree with the trial court–there is well-defined and dominant public policy against acts of domestic violence. Acts of domestic violence are even more disturbing when committed by a police officer–whether on or off duty. It is a violation of public policy to require the continued employment of an officer who has been found to be abusive and untruthful. We find the standard of proof is preponderance of the evidence. The arbitrator concluded the act was proved by a preponderance and the lie was proved by a preponderance. It would be repugnant to public policy to retain Welker as a police officer in these circumstances.

¶ 45    The trial court carefully considered the case and prepared a thorough written order. We found the order helpful in resolving the issues.

¶ 46                            III. CONCLUSION

¶ 47    For the stated reasons, we affirm the trial court's judgment.

¶ 48    Affirmed.