2021 IL App (1st) 201312-U
No. 1-20-1312
Order filed December 13, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| WOMEN'S HEALTHCARE OF BEVERLY, LTD. | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Counter-Defendant-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 L 7356 |
| | ) | |
| STEVEN AMBROSE, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | James E. Snyder, |
| | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held:* Circuit court order affirming arbitration award affirmed in the absence of evidence that arbitrator exceeded his authority or award contained a mistake or miscalculation..

¶ 2   Women's Healthcare of Beverly, Ltd. entered into an employment agreement with Dr. Steven Ambrose to provide gynecological care and ultrasound services to its patients. In addition to his base salary, Ambrose received an annual bonus based on Women's Healthcare's net profits from ultrasounds after deducting specified expenses. When Ambrose left to take a different

position, Women's Healthcare sued, claiming he breached the agreement by improperly retaining excess compensation for 2014 and part of 2015. Ambrose counterclaimed, arguing in part, that Women's Healthcare breached the employment agreement and violated the Illinois Wage Payment and Collection Act by miscalculating his bonuses for the duration of his employment.

¶ 3    The parties agreed to mediate and, if necessary, enter binding arbitration. After mediation failed, an arbitrator found Women's Healthcare had underpaid Ambrose by close to $1.8 million. With interest, attorney's fees, and costs, the final award exceeded $4.5 million. The arbitrator also concluded that Women's Healthcare's claims were moot because it underpaid Ambrose. The circuit court granted Ambrose's petition to confirm the award and denied Women's Healthcare's request to modify, finding no evident miscalculation or mistake. After a hearing, the circuit court also denied Women's Healthcare's motion to reconsider.

¶ 4    Women's Healthcare argues the arbitration award should be vacated as the arbitrator exceeded his authority by failing to consider all of its claims and failing to require Ambrose to prove every element of his counterclaims. Alternatively, the award should be modified to conform to the terms of the employment agreement.

¶ 5    We affirm. Arbitrators need not explain how they reached a conclusion. Yet, in the award, the arbitrator made a detailed analysis of how he determined the underpayment of Ambrose. In the absence of evidence showing the arbitrator exceeded his authority or that the award contains a mistake or miscalculation, Women's Healthcare has not provided a statutory basis to vacate or modify the award under the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq*. (West 2020).

¶ 6                                    Background

¶ 7    Ambrose is an obstetrician and maternal fetal medicine doctor specializing in high-risk pregnancies. Women's Healthcare, a medical corporation, provides general obstetrics and gynecology services through its one client, Advocate Health Centers. In November 2005, Ambrose and Women's Healthcare entered into a physician employment agreement. Under the agreement, Ambrose would provide medical services to Women's Healthcare's patients in exchange for a yearly salary of $250,000 and an annual bonus based on profits attributable to the ultrasounds he performed for Women's Healthcare. Specifically, the employment agreement provided that Ambrose "shall receive a percentage of profit attributable to the revenue derived from the performance of ultrasounds on the patients of the Company." It set the percentage at 50% of the net profit, based on gross revenue from ultrasounds less ultrasound-related expenses Women's Healthcare incurred: Ambrose's base salary and his malpractice insurance, management fees, rent, utilities, equipment cost and depreciation, and salaries for ultrasound technician and personnel.

¶ 8    A few months later, Ambrose and Women's Healthcare signed an addendum to the employment agreement. The addendum clarified Ambrose's management duties for the ultrasound program and as to compensation, expanded the list of expenses that could be used in "calculating the profits from the ultrasound program," including office supplies, professional liability insurance, and the services of the front office receptionists, as well as "build out costs of construction" for expanding the ultrasound facilities. In addition, the addendum excluded overhead expenses incurred in connection with the operation of Women's Healthcare as an expense.

¶ 9     A second addendum in September 2012, clarified Ambrose's responsibilities for communicating with Women's Healthcare about his "moonlighting activities" and "confirm[ing] that such activities do not interfere with [his] primary responsibilities to [Women's Healthcare]."

¶ 10                                    Underlying Litigation

¶ 11     Ambrose worked for Women's Healthcare until May 2015, when he terminated the relationship to accept another position. Before leaving, Ambrose sent a letter to Women's Healthcare inquiring why he was not receiving a bonus for his work from January 2015 to May 2015. He asked for an accounting of the revenue and expenses of the ultrasound program. Ambrose also stated that he would retain a check from Advocate totaling $52,625.22 to offset the amounts Women's Healthcare owed him.

¶ 12     A few months later, Women's Healthcare filed a three-count complaint alleging Ambrose had improperly retained excess bonus payment for 2014 and part of 2015. Specifically, Ambrose breached the employment agreement by: (i) retaining the $52,625.22 payment from Advocate; (ii) retaining excess compensation of $197,132.02 for 2014; and (iii) retaining excess compensation of $90,659.00 for the part of 2015 before he terminated the contract, which count was stricken after Ambrose filed a motion to dismiss by agreement.

¶ 13     Ambrose brought four counterclaims: (i) Women's Healthcare breached the agreement by miscalculating his bonus for the entire agreement (2006 to 2015); (ii) Women's Healthcare violated the Illinois Wage Payment and Collection Act based on the incorrect bonuses under the agreement; (iii) a claim for declaratory judgment to invalidate restrictions on his future

employment as a result of Women's Healthcare's breaches; and (iv) a request for an accounting. Ambrose claimed he wholly performed his obligations under the contract.

¶ 14    Women's Healthcare moved for leave to file an affirmative defense, asserting that before its alleged breach Ambrose had breached the employment agreement by failing to work the required hours per week, taking too much vacation time, and performing ultrasounds at other facilities that compete with Women's Healthcare. The circuit court denied the motion, finding the proposed affirmative defenses a "part of [Ambrose's] burden of proof."

¶ 15    During discovery, the parties entered into a dispute resolution agreement (DRA) to resolve the claims and counterclaims through mediation and, if not successful, through binding arbitration. The circuit court retained jurisdiction to enforce the dispute resolution agreement.

¶ 16    Under the DRA, the parties could "raise any issues which could have been raised in the Lawsuit, including, but not limited to, the issue of whether Dr. Ambrose has fulfilled all of his obligations under the terms of his employment agreement" and amendments to it. The DRA further provided that the award "shall be in satisfaction of all the Parties' claims and counterclaims" and "final and non-appealable." Additionally, a section titled "Appeal" states:

> "The parties further agree to waive any and all rights to appeal of any issue in relation to the Lawsuit and Dispute including, but not limited to, the mediator's award and any and all issues that may be resolved by the Circuit Court of Cook County with respect to enforcement of this Agreement or enforcement of the mediator's award or decisions. The sole exception to this waiver is for entry of an award outside the parameters of any agreement which the Parties may reach that limits the maximum amount which may be awarded to Dr. Ambrose or to [Women's Healthcare]."

¶ 17                                    Arbitration Award

¶ 18    After mediation failed, the parties proceeded to binding arbitration. As required under the DRA, the parties submitted simultaneous briefs. After considering the parties' submissions, including expert reports from accountants proposing various methods for calculating Ambrose's bonuses, the arbitrator issued an interim award in Ambrose's favor. Specifically, the arbitrator found that Women's Healthcare had improperly deducted $3,248,588.26 of expenses attributable to Women's Healthcare's overhead and not related to the ultrasound program. These deductions violated the terms of the employment agreement and addendum concerning the calculation of Ambrose's bonuses. The arbitrator concluded that Ambrose was entitled to over $1.9 million, representing an underpayment of bonuses.

¶ 19    After permitting Ambrose to submit a petition for attorney's fees, costs, and interest, the arbitrator entered a final award. He explained his analysis in detail. He also agreed with Women's Healthcare, and corrected the amount owed for underpayment of bonuses to $1,833,460. He found that Women's Healthcare owed Ambrose $2,076,285.39 in interest, $574,961.50 in attorney's fees, $5,013.34 in costs, and $18,793.16 in JAMS fees, all under section 14(a) of the IWPCA. 820 ILCS 115/14(a) (West 2020). The arbitrator noted that Ambrose had admitted the $52,625.22 he received from Advocate belonged to Women's Healthcare and subtracted it from his calculation. Ambrose's final award totaled about $4.5 million.

¶ 20    As to Women's Healthcare's claims that Ambrose had been overpaid, the arbitrator stated: "As it has been determined that throughout his employ[,] Dr. Ambrose's allocated expenses have been significantly overstated and thus his bonuses have been significantly understated, this claim will not be considered as it is moot. As an aside, Dr. Ambrose is probably correct that such claims are barred by the Voluntary Payment Doctrine."

¶ 21    Ambrose filed a petition to confirm the arbitration award. Women's Healthcare responded and filed a counterpetition to vacate or modify the award, arguing that the arbitrator failed to adjudicate whether Ambrose met his burden of proof on each element of his claims.

¶ 22    The circuit court granted Ambrose's petition and confirmed the final award. The court said, "[o]n review of the award, the pleadings and arguments therein the Court finds that the arbitration was conducted pursuant to the agreement of the parties. The Court does not find that it was procured by corruption, fraud, or other undue means, evident partiality, corruption or misconduct prejudicing the rights of any party. The Court does not find that the arbitrator exceeded his powers." As to Women's Healthcare's request for a modification of the award, the circuit court did "not find that there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property referred to in the award, or that the arbitrator awarded upon a matter not submitted to him. The Court finds no error of form or error which affects or obscures the resolution of the merits of the case."

¶ 23    Women's Healthcare filed a motion to reconsider, arguing that the circuit court's decision confirming the award based only on the briefs, without hearing oral argument, violated its constitutional due process rights. The circuit court rejected this argument. The circuit court also rejected Women's Healthcare's argument that the arbitrator exceeded his powers by failing to address all the arguments or claims, noting "[t]he proceedings at the arbitration or Final Award can't be fairly described as incomplete or summary" and "in any event, [Women's Healthcare] has not provided a basis on which this court finds that the arbitrator exceeded his authority."

¶ 24                                    Analysis

¶ 25    Women's Healthcare contends the arbitrator exceeded his authority by failing to adjudicate (i) all its claims and (ii) whether Ambrose met his burden of proof on each element of his

1-20-1312

counterclaims. Women's Healthcare asks that we vacate the circuit court's judgment confirming the arbitration award under section 12 and remand with instructions to return the case to the arbitrator to decide whether Ambrose performed under the contract. Alternatively, Women's Healthcare asks for modification of the arbitration award under section 13, to conform to the terms of the employment agreement.

¶ 26    Before turning to the merits, we address Ambrose's contention that Women's Healthcare's appeal be dismissed as the parties waived rights to appeal. Specifically, Ambrose points to language in the DRA, stating "[t]he award is final and non-appealable" and the parties agree "to waive any and all rights to appeal of any issue in relation to the Lawsuit and Dispute," specifically including "any and all issues that may be resolved by the Circuit Court of Cook County with respect to *** enforcement of the mediator's award or decisions." In addition, the DRA contains an exception "for entry of an award outside the parameters of any agreement which the Parties may reach that limits the maximum amount which may be awarded to Dr. Ambrose or to [Women's Healthcare]." But Ambrose asserts that exception does not apply because the parties did not enter any high-low agreement to place upper or lower limits on the award.

¶ 27    Alternatively, Ambrose contends that by failing to challenge the completeness of the arbitration award after the interim award and before the final award, Women's Healthcare forfeited its right to raise the issue on appeal.

¶ 28    By design, our review of an arbitration award is limited. *American Federation of State, County & Municipal Employees, AFL-CIO v. State*, 124 Ill. 2d 246, 254 (1988). "The purpose of arbitration is to foster the final disposition of disputes in an easier, quicker, and more economical manner than by litigation." *Kalish v. Illinois Education Ass'n*, 166 Ill. App. 3d 406, 410 (1988). When parties agree to submit to arbitration for a binding and nonappealable decision, they bargain

for finality. *Id.* at 410. So, an arbitrator's final award may not be reconsidered on the merits. *Id.* Under the terms of the DRA, however, the circuit court retained jurisdiction to enforce the award, and, as we will discuss, the Act permits a circuit court to vacate an arbitration award in limited instances, including when the arbitrator exceeds his or her authority. 710 ILCS 5/12(a) (West 2020). So, although the parties waived their rights to ask the court to reconsider the merits, they retained the right to challenge the award on the grounds permitted under the Act. Thus, we deny Ambrose's request to dismiss the appeal on waiver or forfeiture grounds.

¶ 29                                    Vacation of Award

¶ 30     As our supreme court has emphasized, "arbitration awards should be construed, wherever possible, so as to uphold their validity." *Rauh v. Rockford Products, Corp.*, 143 Ill. 2d 377, 386 (1991) (citing *Merritt v. Merritt*, 11 Ill. 565, 568 (1850)). This respects the power of parties to contract at arm's length to select their preferred method for resolving disputes between them. *Tim Huey Corp. v. Global Boiler and Mechanical, Inc.*, 272 Ill. App. 3d 100, 106 (1995); *Garver v. Ferguson*, 76 Ill. 2d 1, 9 (1979) (citing *Burchell v. Marsh*, 58 U.S. 344, 349 (1854) ("[a]rbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes [arbitration] should receive every encouragement from the courts of equity.").

¶ 31     Under the Act, a court may vacate an award due to: (1) its procurement by corruption, fraud, or other undue means; (2) evidence of arbitrator bias; (3) the arbitrator exceeding his or her authority; (4) the arbitrator failing to consider relevant evidence or refusing to allow a reasonable request for a continuance; or (5) the absence of an agreement to arbitrate. 710ILCS 5/12(a)) (West 2020). Women's Healthcare maintains that the arbitrator exceeded his authority.

¶ 32    Judicial modification of an arbitrator's decision would deprive the parties of the benefits of their agreement to arbitrate, so a presumption exists that arbitrators do not exceed their authority. See *Hawrelak v. Marine Bank, Springfield*, 316 Ill. App. 3d 175, 179 (2000); *Huey*, 272 Ill. App. 3d at 106. And because arbitration forgoes a judicial determination, a reviewing court cannot set aside an arbitration award because of errors in judgment or mistakes of law or fact. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 393 (1991). "A party seeking to vacate an arbitration award must provide clear, strong, and convincing evidence that the award was improper." *Hawrelak*, 316 Ill. App. 3d at 179 (citing *Canteen Corp. v. Former Foods, Inc.*, 238 Ill. App. 3d 167, 179-80 (1992)). We review the circuit court's decision to affirm an arbitration award *de novo*, as only its legal conclusions are at issue. *Herricane Graphics, Inc.*, 354 Ill. App. 3d at 157.

¶ 33    Women's Healthcare argues that the arbitrator exceeded his authority by failing to determine whether Ambrose satisfied all of the elements of his counterclaims. Specifically, Women's Healthcare argues that to prevail on a claim for breach of contract, a plaintiff must allege and prove (i) the existence of a valid and enforceable contract; (ii) performance by the plaintiff; (iii) breach by the defendant; and (iv) resulting injury to the plaintiff. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754 ¶ 85. Women's Healthcare asserts Ambrose failed to plead and prove the third requirement, that he performed under the terms of the employment agreement. Similarly, to prevail on his IWCPA claim, Ambrose had to prove Women's Healthcare owed him compensation under a valid employment agreement (*Watts v. ADDO Management L.L.C.*, 2018 IL App (1st) 170201, ¶ 15), which Women's Healthcare claims he failed to do. Women's Healthcare contends that not only did the award fail to find that Ambrose performed under the employment agreement, it incorrectly considered "failure to perform" an affirmative defense for Women's Healthcare to prove. Accordingly, because the award failed to

determine that Ambrose proved all of the elements of each counterclaim, the circuit court judgment confirming the award should be vacated and remanded for a determination as to whether Ambrose proved he performed under the employment agreement.

¶ 34    An arbitrator's lack of reference to defendants' arguments does not mean the arbitrator failed to consider them. *Cohen v. Meyers*, 115 Ill. App. 2d 286, 293 (1969); See also, *Edwards Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 100 (2004). Settled law holds that arbitrators need not provide explanations or rationale on how they reached their conclusions. *Braun/Skiba, Ltd. v. Orchard Partnership*, 177 Ill. App. 3d 331, 335 (1988). Arbitrators only need to announce the result. Where the controversy contains interrelated claims and cross-claims for money damages, the award need not show how each item of the parties' respective demands was resolved. *Edwards Electric*, 229 Ill, App 3d at 100. Rather, " '[t]he awarding of a gross sum of money in such case will be presumed to be a complete adjustment of all matters of difference * * *.' " *Id.* (quoting *Stearns v. Cope*, 109 Ill. 340, 348 (1884).

¶ 35    The arbitration award sets forth the interrelated claims of Women's Healthcare and counterclaims of Ambrose. Both parties alleged the other breached the compensation provision of the employment agreement. The principal issue was whether Ambrose performed under the employment agreement and, thus, deserved his bonus. The arbitrator found in Ambrose's favor, explaining how Women's Healthcare breached the employment agreement by deducting expenses that were not attributable to ultrasounds. Moreover, Women's Healthcare "has failed to show that Dr. Ambrose materially breached the contract by failing to perform" and "has failed to present any documentation that the number of hours worked or the number of ultrasounds performed materially affected the revenue brought into [Women's Healthcare] as a result." The arbitrator concluded that the evidence showed Ambrose had performed. This sufficiently supports his findings.

¶ 36    Women's Healthcare counters that the arbitrator placed the burden to prove performance on it rather than Ambrose. Even accepting that premise, this would be a mistake of law, which cannot be grounds for vacating an arbitration award. *Rauh*, 143 Ill. 2d at 393.

¶ 37    The arbitration award stated it "resolve[d] all issues submitted for decision in this proceeding." As noted, we presume the arbitrator considered all the claims raised by the parties in determining the award, and the award need not show how each item of the parties' respective demands was resolved. *Edwards Electric Co.*, 229 Ill. App. 3d at 100. After considering Women's Healthcare's claims and Ambrose's counterclaims, the arbitrator concluded Ambrose performed under the employment agreement and had been underpaid, which were the issues before him.

¶ 38    Women's Healthcare also argues the arbitrator failed to adjudicate and rule on the elements of two of its three claims, namely, that Ambrose breached the employment agreement by retaining excess compensation for 2014 and part of 2015. We disagree. As Women's Healthcare acknowledges, the arbitrator addressed its claim that Ambrose improperly retained a $52,625.22 from Advocate, which Ambrose admitted. As to the remaining claims, the arbitrator stated that because he had determined that Women's Healthcare had significantly understated Ambrose's bonuses, those two issues were "moot." Thus, in the absence of evidence that the arbitrator exceeded his authority by failing to consider the issues before him, the circuit court did not err in denying Women's Healthcare's petition to vacate the arbitration award.

¶ 39                        Modification of Award

¶ 40    Alternatively, Women's Healthcare contends we should modify the award because the arbitrator rewrote the terms of the employment agreement and misinterpreted the parties' conduct.

¶ 41    Section 13(a) of the Act permits a court to modify an arbitration award where "(1) [t]here was an evident miscalculation of figures or an evident mistake in the description of any person, thing

or property referred to in the award; (2) [t]he arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) [t]he award is imperfect in a matter of form, not affecting the merits of the controversy." 710 ILCS 5/13(a) (West 2020).

¶ 42    Women's Healthcare maintains the arbitrator exceeded his authority and contradicted the employment agreement. As noted, Women's Healthcare failed to present evidence showing the arbitrator exceeded his authority. Moreover, neither assertion provides a statutory basis for modifying the award. As the circuit court found, a request to modify the arbitration award should be denied in the absence of (i) an evident miscalculation of figures, or (ii) an evident mistake in the description of a person, thing, or property referred to in the award, or (iii) an award on a matter not submitted. None occurred here. So, the circuit court properly granted Ambrose's petition to confirm the arbitration award and denied Women's Healthcare's counterpetition to vacate or modify the arbitration award.

¶ 43    Affirmed.